**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MICHAEL CALLARI, individually and on
behalf of other persons similarly situated who
were employed by BLACKMAN PLUMBING
SUPPLY, INC., and/or any other entities
affiliated with or controlled by BLACKMAN
PLUMBING SUPPLY, INC.,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM** |
|  | **AND ORDER** |
| - against - | |
|  | CV 11-3655 (ADS) (AKT) |

BLACKMAN PLUMBING SUPPLY, INC.,
ROBERT MANNHEIMER, as Co-Executor
of the Estate of Richard Blackman, and
ROBERT A. TEPEDINO, as the co-Executor
of the Estate of Richard Blackman, and JOHN
DOES #1-10,

Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

Former Inside Salesperson and Assistant Branch Manager Michael Callari ("Plaintiff")

brings this wage and hour action, individually and on behalf of other persons similarly situated,

against Defendants Blackman Plumbing Supply, Inc. ("BPS"), Robert Manheimer, as co-

executor of the Estate of Richard Blackman, and Robert A. Tepedino, as co-executor of the

Estate of Richard Blackman, and John Does #1-10 (collectively, the "Defendants"), pursuant to

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216, New York Labor Law

("NYLL") Article 19 § 663, NYLL Article 6 §§ 190 *et seq*. and 12 New York Codes, Rules and

Regulations ("NYCRR") § 142-2.2.  Specifically, Plaintiff alleges that he and similarly situated

employees were misclassified by the Defendants as exempt employees under the FLSA and were

thus unlawfully deprived of overtime compensation.

Plaintiff has now moved for conditional certification as a collective action and for notice of pendency to potential collective action members, pursuant to 29 U.S.C. § 216(b).  Defendants oppose the motion on the grounds that (1) Plaintiff was properly classified as exempt and (2) Plaintiff has failed to identify similarly situated employees (beyond one other employee) in this nearly four-year-old action.  Judge Spatt referred Plaintiff's conditional certification motion to this Court for decision.[1]  Based on the Court's review of the parties' submissions as well as the applicable case law, Plaintiff's motion is hereby GRANTED subject to the limitations discussed herein.

I.    BACKGROUND

    A.    The Complaint

Defendant Blackman Plumbing Supply ("BPS") sells, distributes, supplies, and ships plumbing, heating, industrial waterworks, and HVAC equipment.  *See* Complaint ("Compl.") ¶ 9 [DE 1].  BPS has twelve locations in New York State, six in New Jersey, and at least one in Pennsylvania.  *Id*.  The decedent Richard Blackman was formerly an officer, director, president, vice president, and/or owner and/or one of the ten largest shareholders of BPS.  *Id*. ¶ 10. Blackman engaged in the daily operations of BPS and Plaintiff asserts that he is jointly and severally liable with BPS under the FLSA. *Id*. ¶ 11.  Plaintiff has also named John Does #1-10 as Defendants, claiming that they "at all relevant times were, officers, directors, and/or owners and/or one of the ten largest shareholders" of BPS.  *Id*. ¶ 12.   Plaintiff claims that John Does #1-10 are also jointly and severally liable for the wage and hour violations at issue in this case. *Id*. ¶ 13.

---

[1]     The Court notes that Plaintiff has also moved for class certification of his NYLL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.  That portion of the motion is pending before Judge Spatt.

Plaintiff brings this litigation on behalf of himself and as a putative opt-in collective action "consisting of similarly situated employees who worked for Defendants as inside sales and customer service representatives, as well as other non-exempt administrative employees from the period between 2004 and the present." *Id*. ¶ 17. Plaintiff states that both he and the anticipated opt-in class are "all victims of the Defendants' common policy and/or plan to violate the FLSA by (1) misclassifying Plaintiff and other similarly situated members of the putative collective action as exempt from overtime compensation and (2) failing to provide overtime wages, at the rate of one and one half times the regular rate of pay, for all time worked in excess of 40 hours in any given week pursuant to 29 U.S.C. 207." *Id*. ¶ 18.

Starting in or around 2004, Defendants employed "numerous individuals" at BPS offices and warehouses in Mineola, New York, as well as at approximately two dozen other locations throughout New York, New Jersey, and Pennsylvania. *Id*. ¶ 23. "Plaintiff and the other similarly situated members of the putative class did not receive all earned overtime wages, at the rate of one and one half times the regular rate of pay, for the time in which they worked after the first forty hours in any given week." *Id*. ¶ 28. Between July 2004 and July 2008, Plaintiff worked for Defendants as an "inside sales and customer service representative." *Id*. ¶ 36. Plaintiff's "job duties included telephone communications with customers and prospective customers as well as performing sales and customer service related functions, including, but not limited to, processing information and forms regarding sales of goods sold by Defendants, providing pricing, availability, shipping, and order status information to customers and prospective customers." *Id*. ¶ 36. Plaintiff claims that he did not have any "substantial managerial duties" while employed by Defendants. *Id*. ¶ 37. In particular, Plaintiff was "not responsible for decisions regarding the hiring, firing, demotion or promotion of employees." *Id*.

Nor did Plaintiff have "any influence on the structure of bonus incentives" and he "did not exercise independent judgment and discretion on matters of significance while employed by Defendants." *Id*.  Nonetheless, Plaintiff did not receive overtime compensation at one and one-half times his regular rate of pay in weeks in which he worked in excess of forty hours. *Id*. ¶ 38.

During this same period between July 2004 and July 2008, Plaintiff claims that "there were numerous other employees who were similarly situated to the Plaintiff [Callari], inasmuch as they were all non-exempt employees who worked throughout the Defendants['] two dozen locations as inside sales and customer service representatives, and as administrative and clerical personnel." *Id*. ¶ 40.  These individuals also lacked any of the "substantial managerial duties" discussed above but, nonetheless, worked forty-plus hour weeks without appropriate overtime compensation. *Id*. ¶¶ 40-41.

The Plaintiff brings this action, individually and on behalf of individuals similarly situated, to recover for Defendants' violations of the FLSA and NYLL.  Here, Plaintiff seeks to conditionally certify the FLSA claims pursuant to 29 U.S.C. § 216(b).

**B.     Relevant Procedural History**

Plaintiff filed the Complaint on July 29, 2011.  *See* Compl.  On September 28, 2011, Defendants interposed their Answer.  *See* Answer [DE 4].  On September 28, 2012, George Ruggiero ("Ruggiero") opted-in as a plaintiff and is the sole opt-in plaintiff in this action to date. *See* DE 26.  On June 21, 2013, following the death of Richard Blackman, the parties entered into a stipulation substituting Robert Manheimer ("Manheimer") and Robert A. Tepedino ("Tepedino"), as Co-Executors of the Estate of Blackman, as defendants in this action, in place and stead of Blackman.  *See* DE 57.  The Court "so ordered" this stipulation on June 24, 2013. *See* DE 58.

4

Following the completion of discovery, Defendants moved for summary judgment on August 22, 2013, seeking dismissal of the Complaint in its entirety. *See* DE 61. On December 19, 2013, Judge Spatt issued a Memorandum of Decision and Order granting, in part, and denying, in part, Defendants' motion. *See* DE 78. In particular, the Court granted summary judgment dismissing opt-in Plaintiff George Ruggiero "because he waived his right to sue under the FLSA" by executing a WH-58 Form and accepting payment of a settlement following a U.S. Department of Labor investigation into Defendants' wage and hour practices. *Id*. at 24-25, 37. However, Judge Spatt held that Ruggiero may proceed with his NYLL claims because the waiver was limited to his claims under the FLSA. *Id*. at 26, 37.

Further, Judge Spatt denied Defendants' motion for summary judgment as to named-Plaintiff Michael Callari, holding that Plaintiff is "permitted to proceed with his FLSA claim and may move to certify a collective action pursuant to Fed. R. Civ. P. 23." *Id*. In pertinent part, Judge Spatt found that Plaintiff is not precluded from moving for conditional certification even though discovery has been completed. *Id*. at 37. Judge Spatt also found that Plaintiff's claims are subject to the FLSA's two-year statute of limitations because Plaintiff has offered no evidence that the Defendants either knew or recklessly disregarded FLSA requirements when it classified him as an exempt employee. *Id*. at 29-31. Moreover, Judge Spatt held that "[a]s to the Defendants other contentions, such as that the Plaintiff is not similarly situated to other prospective class members, the Court shall address these issues when the Plaintiff makes his motion for certification of a collective action and/or class pursuant to Fed. R. Civ. P. 23." *Id*.

Subsequently, on January 8, 2014, Plaintiff filed a motion for reconsideration of Judge Spatt's December 13, 2013 Memorandum of Decision and Order, pursuant to Local Civil

Rule 6.3.  *See* DE 81.  Specifically, Plaintiff took issue with the finding that opt-in Plaintiff Ruggiero waived his right to sue under the FLSA and, secondly, that the two-year, and not three-year, statute of limitations should apply in this case.  Plaintiff also moved to strike from the record a portion of the declaration of Defendants' witness Mark Schneider which was submitted in support of Defendants' reply on the summary judgment motion, asserting that the declaration contradicted Schneider's deposition testimony.  *See* DE 81.

On April 28, 2014, Judge Spatt issued a Memorandum and Decision and Order concerning Plaintiff's motion for reconsideration and motion to strike.  *See* DE 100.  Judge Spatt determined that the court did not overlook controlling law and/or facts in issuing its December 19, 2013 summary judgment decision.  *Id.*  Consequently, Judge Spatt denied Plaintiff's motion for reconsideration in its entirety.  *Id*.  Further, Judge Spatt found moot Plaintiff's motion to strike the Schneider reply declaration.  *Id.* at 12.  Judge Spatt explained that even if he were to strike the challenged portions of Schneider's reply declaration, the court would still conclude that Ruggiero waived his right to pursue an FLSA action against the Defendants based on the explicit language of the WH-58 Form which Ruggiero signed.  *Id*. at 12.

### C.  Plaintiff's Motion for Conditional Certification

The instant motion was filed on April 17, 2014.  *See* Notice of Motion [DE 99].  In the motion, Plaintiff seeks the following relief individually and on behalf of other persons similarly situated who were employed by BPS and/or any other entities affiliated with or controlled by BPS:  (1) conditional collective certification, pursuant to 29 U.S.C. § 216(b) and (2) Court-facilitated notice of the FLSA claims to putative opt-in Plaintiffs.  *Id.*[2]  Plaintiff argues that he has successfully shown that he is similarly situated to the putative opt-in class insofar as "they all

---

[2]    As noted above, Plaintiff also seeks to certify a class action pursuant to Rule 23, which will be addressed separately by Judge Spatt.

performed primary duties that are inconsistent with any of the FLSA exemptions." *See* Memorandum of Law in Support of Plaintiff's Motion for Collective Class Certification, for Notice to the Class, and Rule 23 Class Certification ("Pl.'s Mem.") at 12 [DE 99-14].  According to Plaintiff, the evidence reflects that the Plaintiff and putative opt-in plaintiffs were "all classified as exempt employees, worked the same hours, including significant overtime, and did not get paid for all hours worked in excess of forty (40) hours, in a given work week."  *Id*. Plaintiff claims that there are "at least seventy-seven (77) other similarly situated inside sales persons, including those with the title of assistant manager, who are employed throughout the branches of BPS."  *Id*.  Plaintiff also seeks Court authorization for a Notice of Collective Action to be sent to all prospective members of the putative class with a six-year notice period given the existence of both FLSA and NYLL claims in this action.  *Id*. at 12-14.  Counsel specifically seeks conditional certification of the following opt-in class:  "all employees of the Defendants during the six years immediately preceding the initiation of this action up to the date of this decision, who performed work as inside sales persons and assistant managers."  *Id*.

In moving for conditional certification, Plaintiff relies on the following evidence: (1) the deposition transcript excerpts of BPS employee Susan Cook, annexed to the Declaration of Robert Connolly in Support of Motion for Certification of Collective and Class Action ("Connolly Decl.") as Exhibit "A" [DE 99-2]; (2) deposition transcript excerpts of BPS employee Paul Monahan annexed to the Connolly Decl. as Exhibit "B" [DE 99-3]; (3) deposition transcript excerpts of BPS employee Edward Cuff annexed to the Connolly Decl. as Exhibit "C" [DE 99-4]; (4) Defendants' Second Revised Response to Plaintiff's First Set of Interrogatories annexed to the Connolly Decl. as Exhibit "D" [DE 99-5]; (5) deposition transcript excerpts of BPS employee Mark Schneider, annexed to the Connolly Decl. as Exhibit "E" [DE 99-6];

(6) U.S. Department of Labor Form WH-58, bearing the name Michael Callari, Jr. annexed to the Connolly Decl. as Exhibit "F" [DE 99-7]; (7) U.S. Department of Labor Form WH-58, bearing the name George Ruggiero, annexed to the Connolly Decl. as Exhibit "G" [DE 99-8]; (8) partially redacted U.S. Department of Labor Compliance Action Report annexed to the Connolly Decl. as Exhibit "H" [DE 99-9]; (9) partially redacted U.S. Department of Labor Back Wage Compliance And Payment Agreement annexed to the Connolly Decl. as Exhibit "I" [DE 99-10]; (10) partially redacted list of inside salespersons and assistant managers employed by BPS, dating back three years prior to the commencement of this action annexed to the Connolly Decl. as Exhibit "J" [DE 99-11]; (11) Declaration of Michael Callari in Support of Motion for Certification of Class and Collective Action ("Callari Decl.") [DE 99-12]; and (12) Declaration of George Ruggiero in Support of Motion for Certification of Class and Collective Action ("Ruggiero Decl.") [DE 99-13].

Defendants filed an opposition to Plaintiff's motion on June 5, 2014, arguing that Plaintiff has failed to meet his burden of demonstrating that he is similarly situated to putative opt-in class members. *See generally* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Collective Certification and Motion for Class Certification ("Defs.' Opp'n") [DE 102-116].  Defendants claim that, despite more than fourteen months of discovery (including nine depositions), Plaintiff has provided only his own "self-serving conclusory declaration and a nearly identical 'fill in the blank' declaration of his only opt-in plaintiff whose FLSA claims have already been dismissed." *Id*. at 13.  Plaintiff, moreover, has failed to show that Defendants implemented a "common policy or scheme to defraud employees." *Id.*  In support of their opposition, Defendants have annexed (1) a copy of the deposition transcript from the December 21, 2012 deposition of BPS Human Resources and Payroll Director Susan Cook

8

annexed to the Declaration of James A. Rose ("Rose Decl.") as Exhibit "A" [DE 102-1]; (2) the

Assistant Branch Manager job description annexed to the Rose Decl. as Exhibit "B" [DE 102-2];

(3) a copy of the deposition transcript from the January 15, 2013 deposition of BPS Mineola

Branch Manager Paul Monahan annexed as Exhibit "C" to the Rose Decl. [DE 102-3]; (4) a copy

of the deposition transcript from the December 21, 2012 deposition of Huntington Branch

Manager Edward C. Cuff [DE 102-4]; (5) copy of the deposition transcript from the

December 17, 2012 deposition of Michal Callari [DE 102-5]; and (6) a copy of the deposition

transcript from the January 23, 2013 deposition of George Ruggiero  [DE 102-6].  Defendants

also have submitted declarations from several current BPS employees [DE 102-7 to DE 102-15].

On July 15, 2014, Plaintiff filed a reply brief in further support of his motion.  *See*

Plaintiff's Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion for

Collective Class Certification, for Notice to the Class, and Rule 23 Class ("Pl.'s Reply") [109].

The Court assesses Plaintiff's motion for conditional collective certification below.

## II.   DISCUSSION

### A.   Conditional Certification Under FLSA, 29 U.S.C. § 216(b)

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or
> section 207 of this title shall be liable to the employee or
> employees affected in the amount of their unpaid minimum wages,
> or their unpaid overtime compensation, as the case may be, and in
> an additional equal amount as liquidated damages. . . . An action to
> recover  . . .  may be maintained against any employer (including a
> public agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of
> himself or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action unless he
> gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id.*; *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action.  First, the court determines whether the proposed class members are "similarly situated."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007).  If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in."  *McGlone,* 867 F. Supp. 2d at 442; *see* 29 U.S.C. § 216(b).  The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated.  *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212.  "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff."  *Bifulco*, 262 F.R.D. at 212 (quotations omitted).

The instant motion concerns only the first step – whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted.  At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  *Doucoure v. Matlyn Food,*

*Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249,

261 (S.D.N.Y. 1997)); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 552 (S.D.N.Y.

2013). Courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is

"considerably less stringent" than the requirements for class certification under Federal Rule of

Civil Procedure 23. *See, e.g., Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001)

(collecting cases). "In making this showing, 'nothing more than substantial allegations that the

putative class members were together the victims of a single decision, policy or plan' is

required." *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950, 2009 WL 1706535, at *3

(E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y.

2005)). The standard of proof remains low because the purpose of this first stage is merely to

determine whether "similarly situated" plaintiffs do in fact exist. *Trinidad*, 962 F.Supp.2d at 553

(citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

Courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus'

exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v.

AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite,

Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)). This determination

is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiff or

plaintiffs. *See Sexton*, 2009 WL 1706535, at *3 (citing *Hens v. ClientLogic Operating Corp.*,

No. 05 Civ. 381, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *see also Hallissey v. Am.

Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs

may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the

affidavits and declarations of other potential class members.").

Indeed, courts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits. *See Kemper v. Westbury Operating Corp.*, No. 12 Civ. 0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Klimchak v. Cardrona, Inc.*, No. 09 Civ. 4311, 2011 WL 1120463, at *4-6 (E.D.N.Y. Mar. 24, 2011) (granting conditional certification at the initial stage of discovery where the two named plaintiffs and two opt-in plaintiffs submitted affidavits); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011) (granting conditional certification for overtime, minimum wage and tip violations at defendants' restaurants based on declarations from named plaintiffs and opt-ins); *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755, 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (granting conditional certification, finding that "[t]he employees' declarations articulate a number of FLSA violations common to all three of the New York locations"); *Cano v. Four M. Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification, finding that sworn statements from the plaintiffs "set[ ] forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay.").

Having reviewed the motion for conditional certification, the Court finds that Plaintiff has presented the requisite "modest factual showing" that Plaintiff and the putative opt-in class "were victims of a common policy or plan that violated the law." *See Doucoure*, 554 F. Supp. 2d 369, 372; *Sbarro*, 982 F. Supp. at 261; *Trinidad*, 962 F.Supp.2d at 552-53. Further, Plaintiff has established a "sufficient factual nexus" between the wage and hour practices to which he and the

putative opt-in class were subjected.  *See Sobczak*, 540 F. Supp. 2d at 362; *Wraga*, 2006 WL

2443554, at \*1.

      For example, Plaintiff has offered a declaration detailing the wage and hour practices that

the Defendants applied to him and other similarly situated individuals.  *See generally* Callari

Decl.  Between 1984 and July 2010, Plaintiff's "primary duties and responsibilities were as an

inside salesperson" at BPS.  *Id*. ¶ 3.  In this capacity, Plaintiff was charged with "communicating

via telephone with customers and prospective customers, and performing sales and customer

service related functions, which included, but was not limited to, processing information and

forms regarding sales of goods sold by Defendants, and providing pricing, availability, shipping,

and order status information to customers and prospective customers."  *Id*.  Plaintiff was given

the title of "assistant manager" in 1989; however, his primary duties remained those of an Inside

Salesperson and he did not receive any increase in pay as a result of the change in title.  *Id*. ¶ 4.

Despite the new title, Plaintiff was not charged with "decisions regarding the hiring, firing,

demotion or promotion of employees" and any of Plaintiff's recommendations on such matters

were "not given any particular weight."  *Id*. ¶ 5.  Further, Plaintiff was not authorized to

"discipline employees" or hold "any influence on the structure of bonus incentives."  *Id*.

Plaintiff claims that he "did not exercise independent judgment and discretion on any matters of

significance with respect to the Defendants' business."  *Id*. ¶ 6.  Likewise, Plaintiff did not direct

the work of "two or more employees" while employed as Assistant Manager.  *Id*.  Plaintiff was

primarily tasked with helping the manager and to "fill in when the manager was out of the

office."  *Id*.

      At all relevant times, Plaintiff was classified as exempt from overtime and paid on a

salary basis despite "regularly work[ing] more than forty hours per week for the Defendants."

*Id.* ¶ 7.  Plaintiff worked Monday through Friday beginning from 7 a.m. – 7:15 a.m. until 5 p.m. – 5:15 p.m.  *Id.*  He routinely worked through his thirty-minute lunch break in order to handle sales calls.  *Id.*  Plaintiff also worked at least one Saturday per month from 8 a.m. – 1 p.m. on an intermittent basis.  *Id.*

During the course of his thirty-year tenure with BPS, Plaintiff asserts that he learned that Defendants have misclassified all Assistant Managers and Inside Salespersons as exempt from overtime compensation.  *Id.* ¶ 8.  One such example is George Ruggiero, who opted-in to this collective action and was employed as an Inside Salesperson at the BPS Mineola branch.  *Id.* ¶ 9.  Ruggiero was also employed as an Assistant Manager at the Queens Village location.  *Id.*  Like Plaintiff, Ruggiero was also paid on a salary basis and regularly worked in excess of forty hours per week but was classified as exempt.  *Id.* ¶ 10.  Moreover, Plaintiff submits that Defendants have employed "numerous additional individuals" as Inside Salespersons (some like Plaintiff with the title of Assistant Branch Manager) throughout more than a dozen branch locations since 2005.  *Id.* ¶ 11.  Like Plaintiff, Ruggiero and all these other similarly situated individuals were classified as exempt but performed non-managerial functions.  *Id.*  This putative class is composed of Inside Salespersons and Assistant Managers with job responsibilities similar to Plaintiff.  *Id.*  They also regularly worked forty-plus hour weeks and were not compensated at one and one-half times their regular rate of pay for overtime.  *Id.*

Further, as Plaintiff explains, in or about 2008, the U.S. DOL Wage and Hour Division conducted an investigation which found Defendants to be in violation of the FLSA.  *Id.* ¶ 12.  As a consequence of the DOL's findings, Plaintiff and other BPS employees were offered a monetary settlement for the period up to and including July 1, 2008.  *Id.* ¶ 13.  However, Plaintiff declined the offer because he believed that it was far below the amount he was actually owed.

14

*Id.* ¶¶ 14-15.  Subsequently, Plaintiff continued his employment with Defendants "under the same exact pay scheme; nothing changed." *Id.* ¶ 17.  Despite the DOL investigation, Plaintiff states that the Defendants continued to improperly misclassify Plaintiff and other Inside Salespersons and Assistant Managers as exempt even though they all continued to work in excess of forty hours per week.  *Id.* ¶ 18.

Opt-in Plaintiff George Ruggiero, a BPS employee from 1995 to 2009, has also submitted a declaration in support of the instant motion for conditional certification.  *See generally* Ruggiero Decl.  As noted above, Judge Spatt found that opt-in Plaintiff George Ruggiero waived his FLSA claims in this action by executing the WH-58 Form as part of the DOL's settlement with Defendants.  Notwithstanding the dismissal of Ruggiero's FLSA claims, the Court may still rely on Ruggiero's declaration when assessing whether Plaintiff is similarly situated to the proposed class.  *See Rosario*, 828 F.Supp.2d at 516 ("Affidavits of workers whose employment falls outside the statutory period 'are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations.'") (quoting *Lujan,* 2011 WL 317984, at *5).

Ruggiero commenced employment with BPS in 1995 in the capacity of Inside Salesperson at the Queens Village branch location.  *Id.* ¶ 2.  BPS changed Ruggiero's title to Assistant Manager in 2000 even though his primary duties continued to be those of an Inside Salesperson.  *Id.* ¶ 3.  Plaintiff's primary duties involved inside sales work during his entire time at the Queens Village branch.  *Id.* ¶ 4.  Although Ruggiero did not have any "substantial managerial duties" during his time as an Assistant Manager, he was classified as exempt and did not received overtime compensation at one and one-half times his regular rate of pay.  *Id.* ¶ 11.  Ruggiero notes that he worked with another Inside Salesperson - - Shelly Kohn - - during his

stint at the Queens Village branch. *Id.* ¶ 5. Like Ruggiero, Shelly Kohn's primary duties were those of an Inside Salesperson. *Id.*

Ruggiero was transferred to the Mineola branch in or about December 2002. *Id.* ¶ 6. There, he was again given the title of Inside Salesperson, a title which lasted for the duration of his employment up until March 9, 2009. *Id.* ¶ 6. At the Mineola branch, Ruggiero worked with other Inside Salespersons, including Mike Horizon, Patrick Montana, and Plaintiff Michael Callari, all of whom were primarily responsible for inside sales for BPS. *Id.* ¶ 8. In his declaration, Ruggiero states that although Callari's title was Assistant Manager in Mineola, he was also primarily engaged in inside sales duties. *Id.* ¶ 9.

Ruggiero's primary duties during his entire fifteen-year career with BPS were comprised exclusively of inside sales work. *Id.* ¶ 10. In particular, Ruggiero was responsible for "communicating via telephone with customers and prospective customers, performing sales and customer service related functions, which included, but was not limited to, processing sales transactions, providing pricing, availability, shipping, and order status information to customers. *Id.* Ruggiero was also charged with handling walk-in customers at the counter and working the cashier. *Id.* Ruggiero further notes that, he worked periodically with engineers on sizing, rough layouts for cast iron, layouts for bathrooms, and the occasional review of blueprints. *Id.*

Like Plaintiff Callari, Ruggiero regularly worked in excess of forty hours per week during his employment with Defendants. *Id.* ¶ 14. Ruggiero also observed that Defendants misclassified "all of the assistant managers and inside sales personnel" as exempt from overtime. *Id.* ¶ 15. Moreover, also like Plaintiff, Ruggiero was offered a settlement for back wages arising from the DOL investigation for the period ending July 1, 2008. *Id.* ¶ 16. Unlike Plaintiff, however, Ruggiero accepted the settlement and received payment. *Id.* ¶ 17. Following the

16

settlement, Ruggiero continued employment with Defendants and still did not get paid at the proper overtime rate for weeks in which he completed more than forty hours of work.  *Id*. ¶ 20. According to Ruggiero, Plaintiff or "other inside salespersons and assistant sales managers" still did not receive the appropriate overtime rate following the DOL settlement.  *Id*.  Ruggiero asserts that employees remained misclassified.  *Id*. ¶ 21.

In addition to the Callari and Ruggiero declarations, Plaintiff has submitted relevant deposition testimony in support of the certification motion.  For example, Plaintiff cites testimony from BPS Human Resources Administrator Susan Cook, who has been employed with Defendants since 1987.  *See* Pl.'s Mem. at 3-4.  Cook testified that "all assistant managers and managers are inside salespeople.  Everybody sells."  *See* Cook Dep. Tr. at 68.  Cook examined Callari's time records for the period from December 29, 2006 to July 16, 2010 and testified that Callari did not receive any overtime pay at one and one-half his regular rate of pay for hours worked in excess of forty per week.  *Id*. at 7-8.  Cook further noted that all Assistant Managers and Inside Salespersons were paid in exactly the same manner throughout BPS.  *Id*. at 8.  Mark Schneider, a payroll processor at BPS for approximately twelve years between 2001 and 2013, also reviewed payroll records and testified that opt-in Plaintiff Ruggiero never received overtime pay.  *Id*. at 7 (citing Schneider Dep. Tr. at 171-73).

Plaintiff also cites testimony from BPS Manager Paul Monahan's deposition.  *See* Pl.'s Mem. at 4.  Monahan commenced employment with BPS in 1985 as an Inside Salesperson and, as of January 2013, was still employed with the company.  *Id*.  During Monahan's stint as an Assistant Manager at the Hicksville branch, he spent 75% of his time performing the duties of an inside sales representative and 25% of the time engaged in assistant managerial duties.  *Id*. (citing Monahan Dep. Tr. at 15-19).  Monahan worked as Manager of the Mineola branch while

17

Callari was employed at that same location as Assistant Manager. *Id.* However, Callari's primary duties were not managerial in nature. *Id.* at 4-5.

Further, Monahan testified that other assistant managers also worked for him during his time at the Lynbrook and Huntington branches. *Id.* at 5. These individuals included Joe Cullen and Steven Baldwin, who similarly spent 75% of their time performing inside sales duties. *Id.* In fact, Monahan testified that all Assistant Managers had the same duties and responsibilities during Monahan's entire 30-year career at BPS. *Id.* These Assistant Managers, moreover, regularly worked from 7:30 a.m. to 5 p.m. and were paid on a salaried basis. *Id.* at 5-6 (citing Monahan Dep. Tr. at 50-51, 54-55, 57-58, 81-82, 201).

Monahan also worked with Insides Salespersons who, according to his deposition testimony, spent 100% of their time engaged in inside sales-related duties. *Id.* at 6. Monahan specifically testified to his personal knowledge about Inside Salespersons at the Hicksville, Lynbrook, Huntington, and Mineola branch locations. *Id.* These Inside Salespersons also worked from 7:30 a.m. to 5 p.m. *Id.*

Plaintiff has also annexed testimony from Edward Cuff, a BPS Manager, who likewise confirmed that the job duties of Inside Salespersons and Assistant Managers are uniform throughout all BPS branches. *Id.* Cuff commenced employment with BPS in 1996 as an Inside Salesperson at the Wantagh location and later moved to the corporate purchasing department in Bethpage. *Id.* In January 2007, Cuff became Manager of the Mineola branch, where Callari worked at the time. *Id.* Cuff held that managerial position until August 2009 when he went to work as Manager of the Huntington branch. *Id.*

Thus, in light of this evidence, the Court finds that Plaintiff has provided a sufficient basis for the Court to grant conditional certification. *See Kemper*, 2012 WL 4976122, at *2;

18

*Lujan*, 2011 WL 317984, at *4; *Cano v. Four M. Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *6; *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (plaintiffs' complaint and supporting affidavits as to common policy affecting class of potential class members "amply satisfied" initial burden).  Plaintiff has offered evidentiary support for his allegation that the Defendants had a policy of depriving Inside Salespersons and Assistant Branch Managers of lawful overtime compensation by misclassifying them as exempt from the FLSA.  Whether Plaintiff can prove that allegation is not for determination on this motion.  The evidence at this preliminary stage suggests that a policy was implemented throughout all BPS branch locations.

The Court finds Defendants' arguments in opposition to the motion to be unpersuasive. Preliminarily, Defendants claim that the motion should be denied since only one other employee - - George Ruggiero - - has opted-in to this action.  *See* Defs.' Opp'n at 13.  Relying on case law from courts sitting outside of the Second Circuit, Defendants claim that Plaintiff must show some evidence that other employees have a desire to join the collective action in order to be granted conditional certification.  *Id*. at 14.  Contrary to the Defendants, Plaintiff submits that the governing case law in the Second Circuit does not require plaintiffs to show that other individuals are interested in joining a collective action.  Pl.'s Reply at 8.  Even assuming that that such a requirement exists, Plaintiff has shown evidence of at least one opt-in Plaintiff's desire to enter this action (*i.e.*, George Ruggiero).  *Id.*

Previous attempts to apply a "desire to opt-in" requirement have been rejected by courts in this jurisdiction.  By way of example, in *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 Civ. 5119, 2014 WL 1998236, at *3 (S.D.N.Y. May 13, 2014), defendants sought to rely on the Eleventh Circuit's decision in *Dybach,* 942 F.2d. 1562, to argue that conditional certification should be denied in light of plaintiff's failure to demonstrate that other employees have a desire to opt-in and join the class.  "Although some district courts outside of the Eleventh Circuit have adopted *Dybach'*s 'desire to opt in' requirement, no other Circuit Court has done so, and it is not the law of this Circuit."  *Sanchez*, 2014 WL 1998236, at *3 (quoting *Gortat v. Capala Bros., Inc.,* No. 07 Civ. 3629, 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010)).  In *Gortat*  - - a conditional certification decision here in the Eastern District - - the court similarly rejected an unsupported attempt to interject a "desire to opt-in" requirement.  There the court followed "the overwhelming majority of district courts outside of the Eleventh Circuit in requiring only a showing of similarly situated persons."  *Gortat,* 2010 WL 1423018, at *10.  The court in *Gortat* further pointed out that such a "requirement has been strongly criticized by several courts outside the Eleventh Circuit."  *Id*. (collecting cases).  This Court therefore finds no merit in Defendants' argument that the absence or lack of opt-in class members should preclude conditional certification of Plaintiff's FLSA claims.

Next, Defendants contend that Callari's declaration is far too conclusory to support conditional certification.  Defs.' Mem. at 14.  Plaintiff's declaration only speaks of his own job duties at the Mineola branch while claiming that he knows of others who were similarly misclassified by Defendants at other branches.  *Id*. at 14-15.  The only other individual identified in Plaintiff's declaration, Defendant points out, is George Ruggiero who has "no similar attributes to [P]laintiff."  *Id*. at 15.  First, Ruggiero is an Inside Salesperson - - not an Assistant

Manager.  *Id.*  Second, Ruggiero has no extant FLSA claims in light of Judge Spatt's summary

judgment decision finding that Ruggiero waived all such claims in the DOL settlement.  *Id.*

Plaintiff replies that he has shown that all Assistant Managers and Inside Salespersons are

similarly situated because "they all had sales as their primary duties, not management."  *See* Pl.'s

Reply at 1.  As Plaintiff notes, "Defendants have conceded that inside sales persons and

[Assistant Branch Managers] were classified as non-exempt and further, they do not dispute that

the [Assistant Branch Managers] regularly worked more than forty (40) hours in a workweek."

*Id.*

The Court finds that Plaintiff had satisfied the modest burden he must uphold at this stage

of the litigation.  The Plaintiff's declaration contains, among other information, numerous details

about his principal job duties, the hours he was required to work, and the locations in which he

worked.  It also asserts that Plaintiff was continuously classified as exempt from overtime

despite his non-managerial responsibilities.  Plaintiff, moreover, identifies George Ruggiero who

was also misclassified as exempt, notwithstanding his non-managerial sales duties and Ruggiero

has submitted a sworn declaration.  Just because Ruggiero has been dismissed as a party does not

mean that he cannot serve as a witness with first-hand knowledge of information relevant to the

claims brought here.  Further, as noted above, Plaintiff's motion is predicated on more than just

his and Ruggiero's declarations.  Plaintiff has submitted, deposition testimony from Susan Cook,

Paul Monahan, Ed Cuff, records from the DOL investigation, and other items produced by

Defendants in discovery.

Other courts in this District have granted certification in circumstances where far less

evidence of a similarly situated opt-in class was offered to the court.  In *Iriarte v. Redwood Deli*

*& Catering, Inc.*, for example, the Court granted a motion for conditional certification which was

based upon an affidavit detailing the plaintiff's personal experiences and observations of his co-workers coupled with discovery responses showing that his employer failed to keep proper wage and hour records.  No. 07 Civ. 5062, 2008 WL 2622929, at *1-3 (E.D.N.Y. June 30, 2008). Here, Plaintiff has provided not only the allegations in the Complaint but also two sworn declarations, deposition testimony from several witnesses, and relevant documentary evidence reflecting that he and the putative opt-in class are similarly situated for purposes of this collective action.  This showing more than satisfies Plaintiff's burden at this stage.  *See Lloyd v. J.P. Morgan Chase & Co*., Nos. 11 Civ. 9305, 12 Civ. 2197, 2013 WL 4828588, at *5 (S.D.N.Y. Sept. 9, 2013) ("The declarations that Plaintiffs have submitted, along with Chase's own description of the Financial Advisor position are sufficient to demonstrate that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions . . . who are classified as exempt pursuant to a common policy or scheme.") (citing *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010)); *see also Pippins*, No. 11 Civ. 0377, 2012 WL 19379, at *9 (S.D.N.Y. Jan. 3, 2012) (granting conditional certification where plaintiffs "submitted pleadings, affidavits, and other evidence . . . that they [were] similarly situated with respect to their job duties and requirements" and employer's job description for the position of Audit Associate was identical across offices).

In any event, "courts in this Circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."  *Hernandez v. NGM Mgmt Group LLC*, No. 12 Civ. 7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases).  For example, in *Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006), the Court granted conditional certification based on the complaint and a single affidavit alleging failure to pay overtime where plaintiff stated that he

was aware, based on conversations, of other similarly situated employees.  Although the plaintiff in *Wraga* specifically identified at least 18 other potential opt-in plaintiffs, a failure to identify the entire opt-in class is not fatal.  *See, e.g., Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013) (rejecting defendants' argument that plaintiff's allegations were "conclusory" and lacked requisite details because they did not include the names of potential plaintiffs, and finding that plaintiff's sworn observations of and conversations with other employees as well as the employer's shift records collectively satisfied the "modest factual showing" required at the certification stage); *Iriarte*, 2008 WL 2622929, at *3 ("…although plaintiff has not identified any other employees who seek to opt in, this is not fatal in light of defendant's failure to keep proper records, the allegations plaintiff makes in his affidavit about observing fellow employees working overtime without proper compensation, and the minimal burden required for certification as a collective action."); *Pefanis v. Westway Diner, Inc.*, No 08 Civ. 002, 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008) ("The fact that no such employee has yet joined this action does not make notice inappropriate.").

Contrary to Defendants' contentions, whether or not Ruggiero's job duties as an Inside Salesperson were identical to the duties Callari was responsible for as an Assistant Manager is of little moment.  In *Iglesia-Mendoza*, defendants argued that the named plaintiffs were not similarly situated to the proposed class members because the vast majority worked as duck feeders, while employees at other facilities performed different functions.  *Iglesias-Mendoza*, 239 F.R.D. at 368.  Defendants there maintained that, because duck feeding is a unique job, "with different work schedules and requirements," plaintiffs could not allege a common practice or policy with respect to other workers at defendants' other poultry facilities.  *Id.*  The court noted, however, that for certification of a representative action, "no showing of numerosity,

typicality, commonality and representativeness need be made." *Id.* at 368 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).   The court in *Iglesias-Mendoza* found that very limited discovery had taken place at that time and that plaintiffs had easily made the modest showing required of them at the preliminary certification stage - - namely, that they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class. *Id.*  The court concluded that the factual variations asserted by defendants did not undercut plaintiffs' allegations of common wage and overtime practices, which violated the FLSA. *Id.*; *see Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919 (E.D.N.Y. May 6, 2013) (noting that "[d]ifferences among class members as to the number of hours worked, the type of work performed, and the amount of pay received concern the amount of damages to which any individual [class member] might be entitled if and when liability is found, not the amenability of plaintiffs' claims to the class action form."); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (finding differences among plaintiffs as to number of hours worked, type of work, and amount of pay related to amount of damages); *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, No. 10 Civ. 5255, 2013 WL 2395288, at *7 (E.D.N.Y. May 31, 2013) (simply because individuals performed different tasks did not defeat motion for class certification since "plaintiff's factual allegations and legal arguments apply to the proposed class across the board to all employees who have been denied minimum wage and overtime pay"); *Schwerdtfeger*, 2011 WL 2207517, at *4 (holding that "the fact that the employees in the putative class performed different functions does not bar conditional certification" so long as they were "subjected to the same alleged unlawful policy that violated the FLSA"); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) (holding that

"variations in positions and job functions do not, at this preliminary stage, change the result" of conditional certification).

Defendants also take issue with the composition of the proposed opt-in class. Defs.' Opp'n at 16. As Defendants put it, "[d]espite over fourteen months of discovery, [P]laintiff still inappropriately maintains that an ambiguous class of employees with the title of Assistant Branch Manager and Inside Salesperson is appropriate." *Id.* (internal citation omitted). Based on this purported ambiguity and Plaintiff's failure to provide any evidence about other BPS branch operations, Defendants argue that the Court should deny the motion. *Id.* at 16-17. For his part, Plaintiff points out that he has proffered evidence from more than one of Defendants' branch locations. Pl.'s Reply at 7. Plaintiff argues that Ruggiero, Callari, Monahan, Cuff, and Montana have collectively offered evidence concerning the duties of Assistant Managers in Mineola, Wantagh, Huntington, Lynbrook, Hicksville, and Queens Village. *Id.* at 7.

 "The fact that the employees held different positions at different locations does not prevent conditional certification. Courts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policy." *Harhash v. Infinity West Shoes, Inc.,* No. 10 Civ. 8285, 2011 WL 4001072, at *3 (S.D.N.Y. Aug. 25, 2011) (collecting cases); *see also Rosario*, 828 F. Supp. 2d at 516-517.

Moreover, the Court notes that conditional certification does not need to be limited exclusively to the locations where Plaintiff himself was personally employed. For example, in *Khamsiri v. George & Frank's Japanese Noodle Restaurant, Inc.*, plaintiff submitted a declaration stating that she and other non-exempt tipped workers performing similar work were paid sub-minimum wage and no overtime compensation. No. 12 Civ. 265, 2012 WL 1981507 at

*1.  The court found that these assertions were sufficient to grant conditional certification.  *Id.* (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F.Supp.2d 55, at 82 (E.D.N.Y. 2008) (collecting cases)).  Moreover, pertinent to the instant case, the court in *Khamsiri* rejected the defendant's assertion that because plaintiff worked at just one of the defendant-employer's locations, she was not entitled to represent similarly situated workers at other locations.  *Id.* *1 n.1.  To the contrary, the court held that:

> … plaintiff has alleged that the three restaurants are jointly owned and operated as a common enterprise, and provides support in her briefing on this motion that the three restaurants share signage place, an entrance, and an address. These are sufficient indicia of the possibility of a common policy or plan among the three restaurants to meet the minimal burden plaintiff faces at this stage of the litigation.

*Id.*  Further, in *Karic v. Major Auto. Co., Inc.*, the court granted conditional certification of all of the defendant's entities, finding sufficient the allegations of a common pay practice as well as a claim of "common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared."  799 F. Supp. 2d 219, 227 (E.D.N.Y. July 20, 2011); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("Conditional class certification is appropriate here where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations.").  There is no dispute that Defendants own and operate all BPS entities in New York, New Jersey, and Pennsylvania.  Moreover, in light of the evidence of a common policy to classify Inside Salespersons and Assistant Branch Managers as exempt from overtime, notwithstanding their primary sales functions, Plaintiff has met his "minimal burden" to demonstrate "sufficient indicia of the possibility of a common policy or plan" across all BPS branch locations.

Next, Defendants contend that Plaintiff's description of his Assistant Manager job duties are unique to him and are not reflected company-wide. *See* Defs.' Opp'n at 17. In support of this argument, Defendants have annexed a "representative sampling" of declarations from Assistant Branch Managers showing that they "spend the majority of their time performing undeniable management duties." *Id*. In light of these declarations, Defendants claim that "it cannot be assumed that every Assistant Branch Manager spent a majority of their time performing the duties of an Inside Salesperson, as [P]laintiff claims he did." *Id*. Defendants point to Plaintiff's assertion that managerial functions comprised a small segment of his job duties as an Assistant Branch manager, while Ruggiero claims that he worked exclusively in a non-managerial role while employed as an Inside Salesperson for Defendants. *Id*. at 18. Thus, Defendants conclude that "[b]y his own account, therefore, [P]laintiff cannot be considered similarly situated with any Inside Salesperson, let alone a class of the same, given the difference in the nature of the roles of Assistant Branch managers and Inside Salespersons." *Id*. (internal citation omitted). Finally, Defendants state that Plaintiff's main grievance lies with his own misclassification which is a fact-sensitive and individualized inquiry not appropriate for conditional certification. *Id*.

Plaintiff responds that courts in this Circuit "regularly refuse" to rely on declarations submitted by current employees in order to undermine a motion for conditional certification. *See* Pl.'s Reply at 3 (citing *Barry v. S.E.B. Serv. of New York, Inc.*, No. 11 Civ. 5089, 2013 WL 6150718, at *4 (E.D.N.Y. 2013) and *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012)). Instead, courts focus on declarations submitted by plaintiffs as well as deposition testimony from named plaintiffs and other evidence produced in discovery. *Id*. at 3-4 (citing *Barry*, 2013 WL 6150718, at *4). Plaintiff adds that "statements

gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Id*. at 4 (citing *Amador v. Morgan Stanley & Co. LLC,* No. 11 Civ. 4326, 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013)).  Several of the declarations submitted by the Defendants here, in any event, contradict the testimony of Defendants' own witnesses (*e.g.*, Paul Monahan, Ed Cuff) and lack "sufficient detail to be probative" of whether their duties were primarily managerial in nature.  *Id*.  Further, the FLSA is a remedial statute and must be construed narrowly to ascertain the "primary duty" of an Assistant Manager employed by Defendants.  *Id*. at 6 (citing *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010)).

When reviewing a motion under 29 U.S.C. § 216(b), courts are not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations." *Hamadou* , 915 F. Supp. 2d at 662 (internal quotation omitted); *Hoffmann*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here").  Indeed, this type of individualized inquiry sought by Defendants is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit.  *See Bates v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations" during the first step in the certification process) (citation and internal quotation marks omitted); *Garcia v. Four Bro. Pizza, Inc.*, No. 13 Civ. 1505, 2014 WL 2211958, at * 5 (S.D.N.Y. May 23, 2014) ("'At this initial stage, the court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations.'") (quoting *Jackson v. Bloomberg, L.P.*, No. 13 Civ. 2001, 2014 WL 1088001, at

28

*3 (S.D.N.Y. Mar. 19, 2014)); *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013) (rejecting defendants' request to compare plaintiffs' declarations with their deposition testimony for inconsistencies because it would "require the Court to resolve factual disputes or make credibility determinations . . . [which] would be inappropriate on this motion at this first stage."); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) ("At [the conditional certification] phase, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.").

The Court therefore finds Defendants' declarations immaterial to assessing whether the putative opt-in plaintiffs are "similarly situated" to Plaintiff Callari.  The appropriate juncture to perform the analysis suggested by Defendants' counsel is during the second step of certification - - after the parties have completed discovery.  Defendants at that time can move for decertification if the record evidence reflects that the Plaintiff and putative opt-in class members are not similarly situated after a review of all discovery, including competing declarations and testimony.  *See Flood v. Carlson Rests., Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *5 n. 6 (S.D.N.Y. Jan. 20, 2015) (rejecting defendants' efforts to weigh competing declarations and other evidence rebutting plaintiffs' conditional certification motion since doing so "would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery.") (quoting *Stevens*, 2012 WL 4801784, at *3).  Finally, to the extent that Defendants argue that Plaintiff and the proposed class members were appropriately classified as exempt, the Court finds this to be an issue going to the merits and, is not thus, a question properly before the Court at this stage of the case.  *See Lloyd*, 2013 WL 4828588, at *4 (explaining in a conditional certification decision that "whether or not Plaintiffs are properly

subject to an exemption from the FLSA's overtime provisions is a merits issue; the law is clear that courts should not weigh the merits at this point in the litigation.") (internal citation omitted).

Defendants further assert that much of Plaintiff's declaration is predicated on hearsay rather than what he personally observed. The Court disagrees. As noted above, Plaintiff and Ruggiero have offered their personal knowledge of Defendants' wage and hour practices during their employment with BPS. To the extent that portions of the Callari and Ruggiero declarations contain hearsay, it is well-settled that "courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice" - - an approach that is "consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit." *See Winfield v. Citibank, N.A*., 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) (alteration and quotations omitted); *see also Ramos v. Platt,* No. 13 Civ. 8957, 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) (same).

As such, the Court finds that Plaintiffs have met their burden to show that the proposed class members are generally "similarly situated." *See McGlone*, 867 F. Supp. 2d at 442; *Rubery*, 569 F. Supp. 2d at 336. Therefore, the Court will conditionally certify the class proposed by the Plaintiffs, with minor amendments, as outlined below.

### B.       Amendments to the Proposed Class

As noted, Plaintiff moves for conditional certification of

> all employees of the Defendants during the six years immediately preceding the initiation of this action up to the date of this decision, who performed work as inside sales persons and assistant managers.

*See* DE 99. Initially, the Court notes that Callari and Ruggiero's employment was limited to the Queens Village and Mineola branches of BPS. However, Plaintiff seeks to conditionally certify

an opt-in class of inside sales persons and assistant managers throughout the company on the basis that they were all victims of a common wage and hour policy or plan that violated the law. As Plaintiff explains in his moving papers, there are at least 77 similarly situated Inside Salespersons, including those with the title of Assistant Manager employed by Defendants. Plaintiff notes that 54 of these 77 individuals are employed in BPS branches within the State of New York whereas the remaining individuals are employed in other branches in New Jersey or Pennsylvania. Plaintiff has annexed a list of inside sales representatives and/or assistant managers to his moving papers. *See* Partially redacted list of inside salespersons and assistant managers employed by BPS, dating back three years prior to the commencement of this action, annexed to the Connolly Decl. as Exhibit "J."

The proposed class of 77 individuals is not all that "broad." Even assuming for the sake of argument that it is broad, the Court points out that other courts have approved similarly broad classes. *See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) (approving class of "[a]ll individuals employed by one or more Defendant(s) at Sullivan County, New York poultry facilities at any time between March 3, 2000 and the present"); *Khamsiri*, 2012 WL 1981507 at *1 (granting certification of all non-exempt tipped employees). Therefore, the Court finds it appropriate to conditionally certify all Inside Salespersons and Assistant Managers employed by Defendants.

Finally, the Court notes that, pursuant to Judge Spatt's December 19, 2013 summary judgment decision, Plaintiff's claims are subject to a two-year - - not three-year - - statute of limitations period. As Judge Spatt held, there was no genuine issue of material fact that Defendants' alleged FLSA violations were willful in nature. As such, the shorter two-year statute of limitations period governs the FLSA claims in this case. Notwithstanding the two-year

limitations period, courts routinely allow plaintiffs to use a six-year statute of limitations when both Plaintiff and class members have NYLL claims. *See Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012) (finding it permissible to extend the notice period to six years for those class members employed in New York that may have NYLL claims).  Here, the Complaint asserts causes of action under both the FLSA and NYLL on behalf of the Plaintiff individually and all such individuals who are similarly situated.

Multiple courts in the Eastern District, including this Court, have held that where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.  *See D'Arpa v. Runway Towing Corp.*, No. 12 Civ. 1120, 2012 WL 6138481, at *1 (E.D.N.Y. Dec. 11, 2012); *Lazo v. Queens Health Food Emporium, Inc.*, No. 11 Civ. 5848, 2012 WL 2357564, at *3 (E.D.N.Y. June 20, 2012); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011); *Schwerdtfeger*, 2011 WL 2207517, at *6; *Klimchak v. Cardrona, Inc.*, No. 09 Civ. 4311, 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011); *Cano*, 2009 WL 5710143, at *8.  Accordingly, the Court finds that a six-year notice period will be applied in this matter. *See Griffith v. Fordham Financial Mgmt, Inc.*, No. 12 Civ. 1117, 2013 WL 2247791, at *4 (S.D.N.Y. May 22, 2013) (finding that "it is in the interest of judicial economy to provide notice covering both the three-year FLSA claims and the six-year [NYLL] claims.") (quoting *Salomon v. Adderley Indus., Inc.*, 847 F.Supp.2d 561, 566 (S.D.N.Y. 2012)).

The Court further points out that only the individuals who are/were employed in New York are entitled to the six-year notice period because of the NYLL claims.  Those Assistant Managers and Inside Salespersons employed in New Jersey and Pennsylvania are entitled to the

two-year notice period.  It is likely then that two different forms of notice will need to be sent. *See Sharma v. Burberry Ltd.*, --- F.Supp.2d ----, 2014 WL 4385426, at \*17 (E.D.N.Y. Sept. 4, 2014) (providing a six-year notice period for individuals employed by defendant in New York and shorter three-year notice period for individuals employed at defendant's New Jersey location not entitled to recover under the NYLL).

"Questions regarding the form of notice are largely left to [the Court's] discretion." *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at \*6 (E.D.N.Y. Oct. 11, 2007) (citing *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105-06 (S.D.N.Y. 2003)).  In exercising that discretion, the Court finds that including notice of the state law claims is appropriate since "[i]nformation regarding state law claims may help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants." *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895, 2012 WL 4976122, at \*4 (E.D.N.Y. Oct. 17, 2012); *accord Guzman*, 2007 WL 2994278, at \*7.  As in *Cano, Moore, Guzman* and other cases, the number of potential plaintiffs is not that high (*i.e.*, 77), such that the Court finds it "prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA.  Since there may be a number of employees who have both timely state and FLSA claims . . . it seems logical, efficient and manageable to compel defendants' production of these names only once." *Han v. Sterling Nat'l Mortgage Co., Inc.*, No. 09 Civ. 5589, 2011 WL 4344235, at \*11 n. 11 (E.D.N.Y. Sept. 14, 2011); *see D'Arpa*, 2012 WL 6138481, at \*1; *Klimchak*, 2011 WL 1120463, at \*7. [3]

---

[3]     Moreover, as noted above, Plaintiffs have also moved for class action certification of their NYLL claims, pursuant to Rule 23.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the FLSA statute of limitations continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013). Several courts, however, have found that the date of the filing of the complaint is more appropriate since equitable tolling issues often arise for prospective plaintiffs.  *See, e.g., Hamadou*, 2013 WL 164009, at *15; *Winfield*, 843 F. Supp. 2d at 410; *Guzelgurgenli*, 883 F. Supp. 2d at 357; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).   In an abundance of caution, the Court finds the latter approach more appropriate and notes that any "challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Whitehorn*, 767 F. Supp. 2d at 451; *Guzelgurgenli*, 883 F.Supp.2d at 357 ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees" for the period running from the date of filing of the complaint.) (citing *Whitehorn*, 767 F. Supp. 2d at 451).  For the sake of clarity, therefore, the class should include all Inside Salespersons and Assistant Managers employed by Defendants (1) in New York at any time on or after July 29, 2005, six years prior to the filing of the Complaint on July 29, 2011, and (2) in New Jersey and/or Pennsylvania at any time on or after July 29, 2009, two years prior to the July 29, 2011 filing of the Complaint.

Based on the foregoing analysis, the Court therefore conditionally certifies the following two distinct opt-in classes, composed of individuals employed by Defendants in New York and, alternatively, those employed by Defendants in New Jersey and/or Pennsylvania:

> (1)     All Inside Salespersons and Assistant Managers employed by Defendants in New York between July 29, 2005 and July 29, 2011.

34

      (2)     All Inside Salespersons and Assistant Managers employed by Defendants in New Jersey and/or Pennsylvania between July 29, 2009 and July 29, 2011.

**C.      Discovery of Identifying Information**

In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members. *See, e.g., Puglisi v. TD Bank, N.A.,* No. 13 Civ. 00637, 998 F. Supp. 2d 95, 2014 WL 702185, at *6 (E.D.N.Y. Feb. 25, 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotations and citations omitted); *Rosario,* 828 F. Supp. 2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs").

Earlier in this case, the Court ordered Defendants to identify all putative opt-in class members from July 2008 to present and their associated employment information. *See* Pl.'s Reply at 2. Specifically, on August 7, 2012, the Court granted Plaintiff's motion to compel "the names, addresses, and telephone numbers for all other inside sales representatives and/or assistant managers dating back to July 2008, three years prior to the filing of the complaint." DE 24 ¶ 1. That Order, Plaintiff notes, "yielded a list of seventy-seven (77) such employees" who worked as Inside Salespersons and Assistant Managers during the period at issue. *See* Pl.'s

Reply at 2.  As previously noted, Plaintiff has annexed to his moving papers a copy of a list of these individuals.  *See* Connolly Decl., Ex. "J."

However, the Court has now granted conditional certification of all Inside Salespersons and Assistant Managers employed by Defendants in New York going back six years from the initiation of this action.  In view of this determination, the Court directs the Defendants to produce to Plaintiff's counsel a revised list of the names, addresses, and telephone numbers for all Inside Salespersons and Assistant Managers working in New York dating back to July 29, 2005.  As to the Inside Salespersons and Assistant Managers who were employed by Defendants in New Jersey and/or Pennsylvania, Plaintiff is entitled to discover identifying information going back only two years - - to July 29, 2009.  The list is to be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential.  To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose.

## III.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED subject to the limitations discussed herein.  In sum, the Court certifies the following two groups:

> (1)   All Inside Salespersons and Assistant Managers employed by Defendants in New York between July 29, 2005 and July 29, 2011.
>
> (2)   All Inside Salespersons and Assistant Managers employed by Defendants in New Jersey and/or Pennsylvania between July 29, 2009 and July 29, 2011.

The Court further orders that:

1.      Within 14 days of entry of this Order, Defendants are to produce a revised list of the names, addresses, and telephone numbers for all Inside Salespersons and Assistant Managers employed by Defendants in New York dating back to July 29, 2005;

2.      Within 14 days of entry of this Order, Defendants are to produce a revised list of the names, addresses, and telephone numbers for all Inside Salespersons and Assistant Managers employed by Defendants in New Jersey and/or Pennsylvania dating back to July 29, 2009; and

3.      Within 14 days of entry of this Order, the parties are directed to meet and confer regarding the Notice of Pendency and to file on ECF a proposed notice for the Court's consideration.

**SO ORDERED.**

Dated:  Central Islip, New York
        March 27, 2015

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge