**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MICHAEL CALLARI, individually and on
behalf of other persons similarly situated who
were employed by BLACKMAN PLUMBING          **ORDER**
SUPPLY, INC., and/or any other entities          11-cv-3655 (ADS) (SIL)
affiliated with or controlled by BLACKMAN
PLUMBING SUPPLY, INC.,
                    Plaintiff,

            -against-

BLACKMAN PLUMBING SUPPLY, INC.,
ROBERT MANNHEIMER, as Co-Executor of
the Estate of Richard Blackman, and ROBERT
A. TEPEDINO, as Co-Executor of the Estate of
Richard Blackman, and JOHN DOES #1–10,
                    Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**Bee Ready Fishbein Hatter & Donovan, LLP**
*Attorneys for the Plaintiff*
170 Old Country Road, Suite 200
Mineola, NY 11501
        By: Robert Connolly, Esq., Of Counsel

**Certilman Balin Adler & Hyman, LLP**
*Attorneys for the Defendants*
90 Merrick Avenue
East Meadow, NY 11554
        By: Sanjay V. Nair, Esq.
           James A. Rose, Esq.
           Douglas E. Rowe, Esq., Of Counsel

**SPATT, District Judge**.

      This case arises from allegations by the Plaintiff Michael Callari (the "Plaintiff") that the

Defendants Blackman Plumbing Supply, Inc. ("BPS"), Richard Blackman ("Blackman") and

John Does # 1–10 (collectively, the "Defendants") improperly denied its inside sales

representatives and assistant branch managers overtime compensation pursuant to the Fair Labor

1

Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and New York Labor Law ("NYLL") §§ 650 *et seq.*

On December 19, 2013, the Court issued an order denying, in part, and granting, in part, the Defendants' motion for summary judgment**.**  The order also granted the Plaintiff leave to file a motion to certify a collective action pursuant to the FLSA § 216(b) and a class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23.

On April 17, 2014, the Plaintiff filed a motion to (i) conditionally certify a collective action pursuant to FLSA § 216(b) and (ii) certify a class action pursuant to Fed. R. Civ. P. 23 for violations of NYLL §§ 650 *et seq.*

On November 20, 2014, the Court issued an order referring to United States Magistrate Judge A. Kathleen Tomlinson the portion of the Plaintiff's motion seeking to conditionally certify a collective action pursuant to FLSA § 216(b).

On March 27, 2015, the Judge Tomlinson granted the Plaintiff's motion to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b).

Presently before the Court is the portion of the Plaintiff's motion seeking to certify a class action pursuant to Fed. R. Civ. P. 23.  For the reasons set forth below, the Court denies the Plaintiff's motion to certify a class action pursuant to Fed. R. Civ. P. 23.

## I. DISCUSSION

### A. Underlying Facts

#### 1. The Parties

The Plaintiff was employed by BPS from May 1981 through July 15, 2010, when he retired.  (Callari Decl. at ¶ 2.)  He was originally hired as an "inside sales representative" in the Mineola Branch.  (Id. at ¶ 3.)  In that role, his job duties entailed entering sales orders that were

placed over the phone, reviewing opened and pending orders, processing returns, and issuing credits to customers, and sometimes assisting customers at the counter.  (Id.; see also December 19, 2013 Summary Judgment Order at 3.)

In 1989, the Plaintiff was promoted to assistant branch manager of the Mineola Branch, a title that he held until the last day of his employment on July 15, 2010.  (Callari Decl. at ¶ 4.)

The Plaintiff has also named John Does #1 to 10 as Defendants, claiming that they "at all relevant times were, officers, directors, and/or owners and/or one of the ten largest shareholders" of BPS. (Compl. at ¶ 12.)

The Defendant BPS is a company that sells plumbing, heating and cooling supplies from retail and wholesale stores and locations.  (The December 19, 2013 Summary Judgment Order at 3.)  BPS has twenty branches in the New York, New Jersey, and Pennsylvania area.  (Cook Dep. Tr. 18:16.)

Blackman was the owner of BPS prior to his death on September 19, 2012.  (Dkt. No. 27; see also Connolly Decl., Ex. H.)

The Plaintiff seeks to certify a class consisting of "all employees of the Defendants during the six years immediately preceding the initiation of this action up to the date of this decision, who performed work as inside sales persons and assistant managers."  (The Pl.'s Mem. of Law at 1.)

**2. The Relevant FLSA and NYLL Exemptions**

BPS paid assistant branch managers a salary and classified them as executive employees exempt from overtime under the FLSA and NYLL.  (Cook Dep. Tr. at 89:23–25.)  From 1989 until his retirement on July 15, 2010, Plaintiff was an assistant branch manager and thus, pursuant to BPS's policy, was classified as an executive exempt from receiving overtime.

3

(Callari Decl. at ¶ 11.)  In the complaint, the Plaintiff asserts that the Defendants did not properly classify him and other assistant branch managers as exempt executives because their primary job duties were the same as inside sales representatives and did not involve any significant managerial responsibilities.  (Compl. at ¶ 20.)  As the central issue in this case is the propriety of the Defendants' policy to allegedly deny assistant branch managers and inside sales representatives overtime compensation under the executive exemption, the Court will provide a brief background as to the applicable legal standards governing that exemption.

The FLSA § 207(a)(1) and NYCRR 142-2.2 require qualifying employers to compensate employees for hours worked in excess of forty hours per work week at a rate not less than one-and-one-half times the regular rate of pay subject to certain exemptions.  29 U.S.C. §§ 206(a)(1), § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  One category of employees exempt from the overtime requirement under FLSA § 213(a)(1) are employees who are employed in a "bona fide executive capacity."

The applicable Department of Labor regulations classify employees as "executives" if (1) they are "[c]ompensated on a salary basis"; (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) they "customarily and regularly direct[ ] the work of two or more other employees"; and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight."  29 C.F.R. § 541.100(a)(1)–(4).  These same factors also govern whether an employee is an executive under the NYLL. See Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556, n.1 (2d Cir. 2012) ("Like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the

FLSA.'") (quoting <u>Reiseck v. Universal Commc'ns of Miami, Inc.</u>, 591 F.3d 101, 105 (2d Cir. 2010)).

### 3. The DOL Investigation

In 2009, an unidentified employee of BPS filed a complaint with the U.S. Department of Labor ("DOL") Wage and Hour Division alleging that BPS had violated FLSA § 207 **by** failing to pay its employees for overtime work. (Connolly Decl., Ex. I.) In a report describing the findings of its investigation, the DOL found that for the period July 1, 2006 through July 1, 2008, BPS had committed "overtime violations" for "all salaried Insides Sales and HVAC Counter employees." (<u>Id.</u> at 2.) The report does not what specify what "HVAC" means, nor is it clear from the record what duties these employees performed at BPS. However, it is clear that "HVAC Counter" employees are not a part of the proposed class at issue here. In total, 61 employees were found to be due back wages in the amount of $123,083.37. (<u>Id.</u>)

The DOL found violations in three different categories. First, the DOL found that "both salaried Inside Sales and HVAC Counter employees were expected to work one 4-hour uncompensated Saturday a month, in addition to their 40 hour workweek." (<u>Id.</u>)

Second, the DOL found BPS sometimes paid employees a "lump sum of $125 for each 4 hours of additional weekend work, regardless of the employee's salary." (<u>Id.</u>) However, this amount often did not cover the back wages due to Inside Sales and HVAC Counter employees. (<u>See</u> <u>id.</u>)

Third, the DOL found that BPS also offered employees "spiffs" or "push money" for overtime work. (<u>Id.</u> at 3.) Here again, these informal payments sometimes were not commensurate with the overtime rate of time and a half established by the FLSA and DOL regulations. (<u>See</u> <u>id.</u>)

As a result of these findings, On March 11, 2009, BPS entered into a compliance agreement with the DOL (the "Compliance Agreement") pursuant to which it agreed to pay its employees backwages in the amount of $123,083.37 over a period of eighteen months.  (See Connolly Decl., Exs. G, H.)

The DOL then offered employees settlement payments pursuant to a formula calculated on, among other things, the number of overtime hours worked as reflected in timecards, payroll records, and interviews.  (Connolly Decl., Ex. H, at 2.)  Employees who accepted the settlement payments were required to sign a WH-58 Form, which resulted in a waiver by the employee as to any claim for backwages under the FLSA.  (Connolly Decl., Ex. F.)

On June 11, 2009, the DOL offered the Plaintiff a net amount of $1,719.44 for unpaid overtime work under the Compliance Agreement.  (Id.)  However, the Plaintiff refused to accept payment because he believed it did not "even [come] close to being the correct amount of wages owed to [him]."  (Callari Decl. at ¶ 15.)

**B. The Relevant Procedural Background**

**1. The December 19, 2013 Summary Judgment Order**

On July 29, 2011, the Plaintiff commenced this action, on behalf of himself and all others similarly situated, seeking to recover allegedly unpaid overtime wages in violation of FLSA § 207, NYLL § 663, NYLL Article 6 §§ 190 et seq., and 12 NYCRR § 142-2.2.

On September 28, 2012, George Ruggerio ("Ruggerio") opted-in as a plaintiff in the proposed collective action pursuant to FLSA § 216.  (Dkt. No. 26.)  In 1995, Ruggiero was hired by BPS as an inside sales representative at the Queens Village branch.  (Ruggiero Decl. at ¶ 3.)  In 2000, Ruggerio was promoted to the title of assistant branch manager.  (Id.)  In 2002, Ruggerio was transferred to the Mineola branch where he was designated as an inside sales

representative, a position that he occupied until he was laid off by BPS on March 9, 2009.  (Id.)
Unlike Callari, Ruggerio executed a WH-58 Form and accepted two checks from the DOL
pursuant to the Compliance Agreement for a total of $2315.12.  (See December 19, 2013
Summary Judgment Order at 17.)

On June 24, 2013, the Court "so ordered" a stipulation by the parties to substitute Robert
Manheimer ("Manheimer") and Robert A. Tepedino ("Tepedino"), as Co–Executors of the
Estate of Blackman, as defendants in this action, in place and instead of Blackman.

Following the completion of discovery, on August 22, 2013, the Defendants moved for
summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Plaintiff's complaint.

On December 19, 2013, the Court issued a Memorandum of Decision & Order granting
in part and denying in part the Defendants' motion for summary judgment.  In particular, the
Court granted the Defendants' motion with respect to the opt-in Plaintiff Ruggerio's FLSA claim
because it found that he waived his right to join a collective action seeking back wages by
signing the WH-58 Form and accepting payments under the Compliance Agreement.  (The
December 19, 2013 Summary Judgment Order at 25.)  However, the Court found that Ruggerio
could still pursue a NYLL claim.  (Id.)

Further, the Court denied the Defendants' motion with respect to the Plaintiff, finding
that there were triable issues of material fact as to whether the Plaintiff was exempt from the
FLSA's overtime requirements pursuant to the executive employee exemption and the
administrative employee exemption.  (Id. at 31–36.)

Finally, the Court rejected the Defendants' argument that the Plaintiff should be
precluded from filing a motion to certify a collective and/or class action at that late stage of

litigation.  (Id. at 37.)  Accordingly, the Court granted the Plaintiff leave to file a motion for certification of a collective and/or class action. (Id.)

On January 8, 2014, the Plaintiff filed a motion pursuant to Local Civil Rule 6.3 for reconsideration of the Court's December 19, 2013 Summary Judgment Order.  On April 28, 2014, the Court denied the Plaintiff's motion.

### 2. The Present Motion

On April 17, 2014, the Plaintiff filed the present motion for certification seeking to certify a Rule 23 class action based on the alleged violation of NYLL § 650, *et seq.*, and a collective action pursuant to FLSA § 216(b) consisting of "all employees of the Defendants during the six years immediately preceding the initiation of this action up to the date of this decision, who performed work as inside sales persons and assistant managers."  (The Pl.'s Mem. of Law at 17.)

In the present motion, the Plaintiff argues that class treatment is appropriate here because (i) assistant branch managers and inside sales representatives shared similar duties and responsibilities; and (ii) they were all improperly classified as exempt from receiving overtime by BPS under the FLSA and NYLL because the primary duties of both inside sales representatives and assistant branch managers were sales-related, not management-related.  (Id. at 19.)

In support, the Plaintiff relies primarily on the deposition testimony of (i) Susan Cook ("Cook"), a BPS human resources administrator; (ii) Paul Monahan ("Monahan"), the branch manager at the Hicksville, Lynbrook, Huntington, and Mineola branches; and (iii) Edward Cuff ("Cuff"), who served as a branch manager at the Mineola and Huntington branches.  He further

relies on the DOL Compliance Agreement and the declarations filed by the Plaintiff and Ruggiero.

On June 5, 2014, the Defendants filed a memorandum in opposition to the Plaintiff's motion, arguing that certification is inappropriate because the Plaintiff has failed to show that he, as a former assistant branch manager at the Mineola branch, is similarly situated to assistant branch managers at other BPS branches and inside sales representatives.  (The Def.'s Mem. of Law at 1.)  In so arguing, the Defendants point to other portions of the deposition testimony of Cook, Monahan, and Cuff, which they contend shows that the duties of assistant branch managers differed at every branch.  (Id. at 6.)  In addition, the Defendants submits nine declarations of current assistant branch managers who all describe their primary duties as involving significant managerial responsibility and independent discretion.  (Id. at 5.)

### 3. Judge Tomlinson's Decision and Order

On March 27, 2015, Judge Tomlinson granted the Plaintiff's motion for conditional certification of a collective action pursuant to FLSA § 216(b).  Judge Tomlinson found that the Plaintiff "has presented the requisite 'modest factual showing' that Plaintiff and the putative opt-in class 'were victims of a common policy or plan that violated the law.'"  (March 27, 2015 Collective Certification Order at 12) (quoting Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 371 (E.D.N.Y. 2008)).

As Judge Tomlinson made clear in her order:

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. First, the court determines whether the proposed class members are 'similarly situated.' McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." McGlone, 867 F. Supp. 2d at 442; see 29 U.S.C. § 216(b). The second step, which typically occurs after

9

the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. <u>Rosario v. Valentine Ave. Discount Store,</u> Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); <u>Bifulco</u>, 262 F.R.D. at 212. 'At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff.' Bifulco, 262 F.R.D. at 212 (quotations omitted).

(<u>Id.</u> at 10.)  The Plaintiff's motion concerned the first step of this analysis — whether the proposed opt-in members are "similarly situated" **so** that conditional certification should be granted.  (<u>Id.</u>)  To succeed on this first step, "a plaintiff need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  (<u>Id.</u>) (quoting <u>Doucoure v. Matlyn Food, Inc.</u>, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008)).  Significantly, when reviewing a motion for conditional certification, courts are not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations."  (<u>Id.</u> at 28) (quoting <u>Hamadou v. Hess Corp.</u>, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)).

After reviewing the evidence submitted by the parties, and without resolving any factual disputes related to the duties of the assistant branch managers and inside sales representatives, Judge Tomlinson found that the Plaintiff "has presented the requisite modest factual showing that [the] Plaintiff and the putative opt-in class were victims of a common policy or plan that violated the law."  (<u>Id.</u> at 12) (internal quotation marks omitted.)  However, given issues as to statute of limitations, the Court altered the definition of the class slightly and conditionally certified two opt-in classes:  "(1) All Inside Salespersons and Assistant Managers employed by Defendants in New York between July 29, 2005 and July 29, 2011; (2) All Inside Salespersons and Assistant Managers employed by Defendants in New Jersey and/or Pennsylvania between July 29, 2009 and July 29, 2011."  <u>Id.</u> at 34.

10

As is made clear below, the evidentiary standard required to meet the first step of conditional certification pursuant to FLSA § 216 is more lenient than the evidentiary standard required to meet the pre-requisites for certification of an opt-out class action pursuant to Fed. R. Civ. P. 23.  See Saleem v. Corporate Transp. Grp., Ltd., No. 12 CIV. 8450 (JMF), 2013 WL 6061340, at *3 (S.D.N.Y. Nov. 15, 2013) ("Notably, this 'rigor[ ]' stands in sharp contrast to the scrutiny a court must give a motion to preliminarily certify a FLSA claim as a collective action. There, the moving party must make only a 'modest factual showing' that there exist 'similarly situated plaintiffs.'") (quoting Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010)); see also Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) ("As a result, the 'similarly situated' standard for certifying a [FLSA] 216(b) collective action is 'considerably more liberal than class certification under Rule 23.'") (quoting Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).

Thus, Judge Tomlinson's decision to grant the Plaintiff's motion for conditional certification of an FLSA § 216(b) collective action does not affect this Court's analysis of whether the proposed class meets the Rule 23 requirements.

## II. DISCUSSION

### A. Legal Standards

Rule 23(a) requires that all class actions satisfy the following requirements: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997).

11

Where, as here, a party seeks to certify a class under Rule 23(b)(3), a party must also show that (1) "[c]ommon questions . . . 'predominate over any questions affecting only individual members'" and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Id.

The party seeking class certification bears the burden of proving compliance with each of Rule 23's requirements by a preponderance of the evidence. Perez v. Allstate Ins. Co., No. 11-CV-1812 JFB AKT, 2014 WL 4635745, at *12 (E.D.N.Y. Sept. 16, 2014) (citing Berks Cnty. Emps.' Ret. Fund v. First Am. Corp., 734 F.Supp.2d 533, 536 (S.D.N.Y. 2010)); see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202-03 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). Moreover, a district court must "assess all of the relevant evidence admitted at the class certification stage." In re Initial Public Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006). In this regard, the district court must conduct "a rigorous analysis" of the evidence in determining that the pre-requisites of Rule 23 are satisfied and resolve "factual disputes relevant to each Rule 23 requirement." Cuevas v. Citizens Fin. Grp., Inc., 526 F. App'x 19, 21 (2d Cir. 2013) (Summary Order) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)).

As an initial matter, the Court notes that it need not reach the numerosity requirement as it finds that the Plaintiff has failed to meet his burden with respect to the (i) commonality; (ii) typicality and adequacy of representation; and (iv) the predominance and superiority requirements of Rule 23(b)(3).

12

**B. As to the Commonality Requirement**

Rule 23(a)(2) requires that the movant demonstrate that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

Prior to the Supreme Court's decision in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011), some courts in this circuit had found the commonality requirement to be satisfied where the plaintiff was able to show generally that there were questions of law or fact common to the class as a whole.  See, e.g., <u>In re NASDAQ Mkt.-Makers Antitrust Litig.</u>, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)."); <u>In re Currency Conversion Fee Antitrust Litig.</u>, 224 F.R.D. 555, 562 (S.D.N.Y. 2004) ("The commonality requirement is met if the plaintiffs' claims share a common question of law or fact.")

However, in <u>Wal-Mart Stores, Inc. v. Dukes</u>, the named plaintiffs sought to certify a class action pursuant to Rule 23(b)(2) and (b)(3) of current and former employees who had allegedly been discriminated against on the basis of sex by being denied equal pay and promotions in violation of Title VII of the Civil Rights Act of 1964. 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011).  The Supreme Court reversed the decision by the Ninth Circuit certifying the class because it found that the proposed class had failed to meet the requirements of Rule 23.  <u>Id.</u> at 2561.  As relevant to the commonality requirement, the court clarified that the existence of a "common contention" is not sufficient; rather, "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551.

The Supreme Court further explained that in cases where an employee claims to have been denied a promotion on account of race or gender, the plaintiff will be able to show that such a question is "capable of classwide resolution" where (i) the employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees"; or (ii) "[s]ignificant proof that an employer operated under a general policy of discrimination[.]" Id. at 2553.

The Court noted that the first manner of proving the question of gender discrimination on a class-wide basis — a biased testing procedure — was not present in the case. Id. It then found that the plaintiffs had failed to show a discriminatory corporate policy, the second manner of generalized proof of discrimination, Id. at 2554. The Court reasoned:

> The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal–Mart's 'policy' of allowing discretion by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices.

Id.

Further, the Court rejected the plaintiffs' contention that a discriminatory policy on the part of Wal-Mart could be inferred on the basis of statistical disparities between the number of men and women employed at Wal-Mart or what the Court found to be weak anecdotal evidence of discrimination. Id. at 2555. Accordingly, the Court found that the Plaintiff failed to satisfy commonality. Id. at 2556–55.

Here, the Plaintiff argues that commonality is satisfied because there are number of questions common to the proposed class:

14

(1) whether Defendants properly classified class members as exempt; (2) whether Defendants required the class members to work in excess of 40 hours per workweek; (3) whether class members worked in excess of 40 hours per workweek; (4) whether Defendants failed or refused to pay class members overtime pay for hours worked in excess of 40 hours per workweek; and (5) whether Defendants willfully failed or refused to pay class members overtime pay for hours worked in excess of 40 hours per workweek; (6) whether Defendants intentionally made misrepresentations or omissions of material fact to the United States Department of Labor regarding the amount of hours class members worked in excess of forty (40).

(The Pl.'s Mem. of Law at 20.)

However, as Wal Mart clarified, the presence of common questions is not sufficient to satisfy commonality; rather, "Rule 23(a)(2)'s commonality prerequisite requires a showing that plaintiffs' claims 'depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution.'" Cuevas v. Citizens Fin. Grp., Inc., 526 F. App'x 19, 21 (2d Cir. 2013) (Summary Order) (quoting Wal–Mart, 131 S.Ct. at 2551, 180 L.Ed.2d 374); see also Romero v. H.B. Auto. Grp., Inc., No. 11 CIV. 386 (CM), 2012 WL 1514810, at *18 (S.D.N.Y. May 1, 2012) ("After Dukes, though, the fact that Plaintiff came up with a list of common questions is no longer sufficient.") (citation omitted).

Therefore, the Court must determine whether any of the alleged questions identified by the Plaintiff are (i) in fact common to the class; and (ii) if so, whether they are capable of class wide resolution.

The Plaintiff has not provided any basis to believe that questions two through four — whether the Defendants required both inside sales representatives and assistant branch managers to work overtime; whether they did in fact work overtime; and whether the Defendants refused to pay them for such overtime — were to be common questions for assistant branch managers and inside sales representatives.  In a report of its investigation into whether the BPS failed to pay employees overtime, the DOL found that BPS had a policy requiring "both salaried Inside Sales

and HVAC Counter employees" to "work one 4-hour uncompensated Saturday a month, in addition to their 40 hour work week."  (Connolly Decl., Ex. H at 2.)  However, there is no evidence in the DOL report to suggest that this policy also applied to assistant branch managers.

In their declarations, the Plaintiff provides anecdotal evidence that he and Ruggiero, who were both assistant branch managers at the Mineola and Queen Village branches, worked more than forty hours per week.  (Callari Decl. at ¶ 11.)  However, the Supreme Court in Walmart, made clear that anecdotes of illegal conduct are not sufficient to establish that BPS had a company-wide policy or practice, especially where, as here, the proposed class members are spread out across twenty branches and three different states.  See Walmart, 131 S. Ct. at 2556, 180 L. Ed. 2d 374 ("Here . . . respondents filed some affidavits reporting experiences of discrimination — about 1 for every 12,500 class members — relating to only some 235 out of Wal–Mart's 3,400 stores . . . . Even if every single one of these accounts is true, that would not demonstrate that the entire company 'operate [s] under a general policy of discrimination,' . . . which is what respondents must show to certify a companywide class.'").

Therefore, the Court finds that the question of whether the class members worked in excess of forty hours per week would require the Court to make individual determinations with respect to each class member, and thus does not satisfy the commonality requirement.  See Velasquez v. Digital Page, Inc., 303 F.R.D. 435, 442 (E.D.N.Y. 2014) ("The issue for this case is whether . . .  each individual plaintiff was entitled to overtime that they did not receive.  In this case, that is not a 'common question,' nor are there common answers.  [FLSA] § 207(i) requires a 'highly individualized' inquiry focused on 'week-by-week and other periodic calculations,' such as regular rate of pay, which 'is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight time earnings for

such hours to obtain the statutory regular rate.'") (quoting <u>Johnson v. Wave Comm GR LLC</u>, No. 6:10–CV–346 (DNH), 2011 WL 10945630, *9, n. 15 (N.D.N.Y. Oct. 4, 2011)).

With respect to questions five and six — whether the Defendant willfully failed to pay overtime to class members or made intentional misrepresentations to the DOL regarding the class members' overtime hours — as this Court noted in the December 19, 2013 Summary Judgment Order, there is no evidence in the record to suggest that the Defendants acted willfully. (<u>See</u> Dec. 19, 2013 Summary Judgment Order at 27.)  Moreover, the DOL does not make any reference to willful conduct or misrepresentations on the part of BPS in its report of its investigation or in the Compliance Agreement.  (<u>See</u> Connolly Decl., Exs. H, I.)  Thus, the Court does not view questions four and five as either relevant to the instant action or common to class members.

Therefore, the only potential common question raised by the Plaintiff is the first question —— whether the Defendants properly classified class members as exempt from overtime requirements.

However, the Plaintiff has not demonstrated that the Defendants classified both inside sales representatives and assistant branch members as "executives" exempt from overtime requirements.  As stated above, employees are classified as exempt "executives" under the FLSA and NYLL if (a) they have as their "primary duty" the "management of the enterprise"; (b) "customarily and regularly" direct the work of two or more employees; and (c) have authority to hire and fire other employees, or make suggestions relating to hiring and firing that are given 'particular weight.'"  29 C.F.R. § 541.100; <u>see also</u> N.Y. Comp.Codes R. & Regs. tit. 12, § 142-2.2.

There is evidence in the record, and the Defendants appear to concede, that BPS had a policy whereby it classified assistant branch managers as exempt from overtime requirements. For example, Cook, the human resources administrator for BPS since 1987, testified that "assistant [branch] managers and managers were exempt from overtime." (Cook Dep. at Tr. 15:19; 89:23–25.)

However, the Plaintiff has failed to provide evidence that there was a similar policy whereby inside sales representatives were also classified as exempt from overtime. Indeed, when asked whether all inside sales representatives at Blackman Plumbing are "exempt from overtime," Cook responded, "no." (Id. at Tr. 99:2.) She based this conclusion on "talking with my co-worker, Mark, who processes payroll, who has the time sheets, who sees the hours, and from a Department of Labor information that he has received over time determined how an employee was paid." (Id. at Tr. 91:14–15.)

The only evidence to the contrary are the declarations filed by the Plaintiff and opt-in Plaintiff Ruggiero in support of the present motion. In particular, the Plaintiff, who was an inside sales representative from 1981 through 1989, states that "[d]uring my nearly thirty years at Blackman and during the pendency of this law suit, I have learned that the Defendants also misclassified all assistant managers and inside sales personnel, as being exempt from receiving overtime compensation." (Callari Decl. at ¶ 8.) However, the Plaintiff does not explain on what basis he believes that inside sales personnel at BPS's nineteen other branches were classified as exempt from overtime.

Moreover, in his deposition testimony, when asked if and when he spoke to other employees about his belief that inside sales representatives and assistant branch managers were classified as exempt from overtime requirements, the Plaintiff testified that "he never spoke to

18

anybody about it except when I asked if he wanted to join the suit, and Pat Montana." (Callari

Dep. Tr. at 240:5–7.)  When asked when he talked to Pat Montana, the Plaintiff stated, "about a

month and a half ago."  (Id. at 240:9–10.)  The Plaintiff retired from BPS on July 15, 201**0**; thus,

the conversation he references allegedly occurred after he had left BPS.  Thus, by the Plaintiff's

own admission, his belief that all inside sales representatives were exempt from overtime

requirements was not based on any contemporaneous conversations that he had with employees

while he was employed by BPS.

        In light of the testimony of Cook, who was a human resources administrator familiar with

BPS's payroll policies, and the Plaintiff's admitted lack of any personal knowledge as to the

classification of inside sales representatives working at other BPS branches, the Court does not

find the Plaintiff's assertion that BPS classified all inside sales representatives as exempt from

overtime to be credible.  See Ramos v. Baldor Specialty Foods, Inc., No. 10 CIV. 6271 (RMB),

2011 WL 2565330, at *4 (S.D.N.Y. June 16, 2011) ("[C]ourts in this Circuit . . . 'have rejected

such attempts to rely on declarations that contradict the witness's prior deposition testimony and

have granted summary judgment even where the purported new evidence would otherwise create

a triable issue of fact.'") (quoting Golden v. Merrill Lynch & Co., No. 06 CIV. 2970 (RWS),

2007 WL 4299443, at *1 (S.D.N.Y. Dec. 6, 2007) (collecting cases)); Damassia v. Duane Reade,

Inc., 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("While the declarations of assistant managers

offered by the parties are sharply at odds with one another, the Court finds the deposition

testimony more reliable than these prepared written statements, because it is in the witnesses'

own words, and because opposing counsel has had an opportunity for cross examination.").

        Similarly, opt-in Plaintiff Ruggiero, who was an inside sales representative at the Queens

Village branch from 1995 through 2000 and an inside sales representative at the Mineola branch

from 2002 through 2009, stated in his declaration, "During the entire time that I was employed by the Defendants, I was paid on a salaried basis and classified as exempt from receiving overtime pay for any hours that I worked in excess of forty hours, during any given work-week." (Ruggiero Decl. at ¶ 13.)   However, as described above, the Court cannot infer that a policy existed based solely on Ruggiero's account, especially, where, as here, Cook testified on the basis of personal knowledge that inside sales personnel did receive overtime and were not classified as exempt.  (Cook Dep. Tr. at 99:2.); see also Wal-Mart Stores, 131 S. Ct. at 2556, 180 L. Ed. 2d 374 ("Respondents' anecdotal evidence suffers from the same defects, and in addition is too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory.").

As the Plaintiff has failed to establish the existence of a unified policy exempting inside sales representatives from overtime, the Court finds that the question of whether the Defendant misclassified class members as exempt from overtime is not common to all of the proposed class members.

In sum, as the Plaintiff has failed to establish that any of the six questions that it identifies are either (i) common to both inside sales representatives and assistant branch managers; or (ii) subject to generalizable proof, the Court finds that the Plaintiff has failed to establish commonality.

## C. As to the Typicality and Adequacy Requirements

Even if the proposed class satisfied commonality, the Court finds that proposed class would still fail to satisfy the remaining Rule 23(a) requirements of typicality and adequacy of representation.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality is intended to "ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."'  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)).

This requirement is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993); see also Perez v. Allstate Ins. Co., No. 11-CV-1812 (JFB), 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014) (same); In re Sinus Buster Products Consumer Litig., No. 12-CV-2429 (ADS), 2014 WL 5819921, at *4 (E.D.N.Y. Nov. 10, 2014) (same).

"'[M]inor variations in the fact patterns underlying individual claims' does not defeat typicality." Perez, 2014 WL 4635745, at *24 (quoting Robidoux, 987 F.2d at 936).  However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)); see also Gordon v. Sonar Capital Mgmt. LLC, No. 11-CV-9665 (JSR), 2015 WL 1283636, at *5 (S.D.N.Y. Mar. 19, 2015) (same).

In addition, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The issue of whether the proposed class

representative is subject to a unique defense is also relevant to whether he or she will be an adequate representative of the class.  See Gordon v. Sonar Capital Mgmt. LLC, No. 11-CV-9665 JSR, 2015 WL 1283636, at *5 (S.D.N.Y. Mar. 19, 2015) ("The issue of unique defenses is relevant not only to adequacy, but also to the typicality and commonality prongs of Rule 23(a)."); Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 177 (S.D.N.Y. 2008) ("[A] proposed class representative may not satisfy the adequacy prong if his or her case involves problems that 'could become the focus of cross-examination and unique defenses at trial, to the detriment of the class.'") (quoting In re NYSE Specialists Sec. Litig., 240 F.R.D. 128, 144 (S.D.N.Y. 2007)). That is because "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).

In the present case, the Plaintiff, as a former assistant branch manager, seeks to represent a class consisting of BPS employees and former employees who have "performed work as inside sales persons and assistant managers."  (The Pl's Mem. of Law at 1.)  There is evidence in the record, and the Defendants appear to concede, that assistant branch managers were classified by BPS as "executives" who were exempt from receiving overtime under the FLSA and NYLL. However, as described above, the evidence tends to show that inside sales representatives were not classified as exempt pursuant to the same policy.  Therefore, unlike the inside sales representatives who were not classified as exempt, the assistant branch managers' NYLL claims will be subject to a unique defense:  namely, whether BPS properly classified them as "executive" employees.

The answer to that question is not a simple one.  As stated previously, the applicable administrative regulations classify employees as "executives" if (1) they are "[c]ompensated on a

salary basis"; (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) they "customarily and regularly direct[ ] the work of two or more other employees"; and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight."  29 C.F.R. § 541.100(a)(1)–(4); see also Ramos, 687 F.3d at 556, n.1 ("Like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the FLSA.'") (quoting Reiseck, 591 F.3d at 105).

Significantly, the "regulations require a court to 'determine [ ]' the 'exempt or nonexempt status of any particular employee . . . on the basis of whether the employee's salary and duties meet the requirement of the regulations' defining 'executive employees.'" Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010) (quoting 29 C.F.R. § 541.2).  Thus, answering the question of whether assistant branch managers were properly classified by BPS as exempt from overtime will likely require the Court to examine the duties and responsibilities of each individual assistant branch manager.  See id. ("To determine whether an employee's 'primary duty' is management, . . . a court must analyze 'all the facts in a particular case,' looking to the 'principal, main, major or most important duty that the employee performs[.]'")  (quoting 29 C.F.R.  § 541.700(a)).

Despite the individualized inquiry normally required by a court to determine whether an employee qualifies as exempt from overtime, courts in this Circuit have found certification appropriate where there is evidence "tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria."  Myers, 624 F.3d at 549.

For example, in Jacob v. Duane Reade, Inc., 289 F.R.D. 408, 414 (S.D.N.Y.) *on reconsideration in part on other grounds*, 293 F.R.D. 578 (S.D.N.Y. 2013), the plaintiff sought

to certify a proposed class of assistant store managers seeking overtime wages who the defendant-drug store company had classified as executives exempt from FLSA and NYLL overtime requirements.  Id. at 411.  The court found the commonality and typicality requirements to be satisfied because there was evidence of a company document containing a "uniform description of [the assistant store managers'] duties" and deposition testimony tended to show that each of the class members had the same "baseline responsibilities from store to store, and that these general duties have not changed significantly since 2007."  Id. at 415, 417–18.

Similarly, in Perez v. Allstate Ins. Co., No. 11-CV-1812 (JFB), 2014 WL 4635745, at *3 (E.D.N.Y. Sept. 16, 2014), plaintiffs, former employees of the defendant-insurance company, sought to certify a class of insurance adjusters who were classified by the defendant as exempt from overtime.  After reviewing the evidence, the court concluded that "[the] plaintiffs have shown that Adjusters in New York are subject to uniform policies and a uniform evaluation system, receive uniform training, and operate pursuant to a uniform job description."  Id. at *16.  As such, the court found that the plaintiffs satisfied both commonality and typicality.  Id. at 16, 18 ("Because plaintiffs have established that Adjusters across New York, including the named plaintiffs, shared common job duties, plaintiffs have met the typicality requirement.").

By contrast, in the present case, there is no common policy or document that defines the job or responsibilities of both assistant branch managers and inside sales representatives.  The Defendants provide a document that appears to set forth a job description for assistant branch managers created by Cook, the BPS human resources administrator.  (Rose Decl., Ex. B.) However, this document does not purport to describe the role of inside sales representatives who are also a part of the proposed class.  Further, Cook testified that job responsibilities of assistant branch managers were not defined by the document setting forth their job description; rather, it

24

"would really be the branch manager's discretion as to what they may have needed an assistant manager to perform during the same course of a workday." (Cook Dep. Tr. at 61:16–20.) As the Court noted in <u>Wal-Mart</u>, a corporate policy of "*allowing discretion* by local supervisors over employment matters" is "[o]n its face, of course, . . . just the opposite of a uniform employment practice that would provide the commonality needed for a class action." 131 S. Ct. at 2554, 180 L. Ed. 2d 374 (emphasis in original).

Moreover, the evidence in the record tends to suggest that the duties of inside sales representatives and assistant branch managers varied across BPS's twenty branches. The Plaintiff makes much of a statement by Cook in her deposition, "As far as I can recall, all assistant branch managers and managers are inside salespeople. Everybody sells." (Cook Dep. Tr. at 68:15–17.) At most, this statement can be read to suggest that assistant branch managers and branch managers also engaged in the selling of BPS's products. The statement does not provide an answer to the crucial question in determining whether an employee is a "bona fide executive" — whether sales-related tasks were the primary duties of assistant branch managers or whether management-related tasks were their primary duties. 29 C.F.R. § 541.100(a)(1)–(4) (noting that the second factor in determining whether an employee is executive is whether his or her "primary duty is management of the enterprise ... or of a customarily recognized department or subdivision thereof"). Thus, the Court does not view this statement as persuasive evidence that the duties of assistant branch managers and inside sales representatives were consistent across all branches.

The Plaintiff also relies on the testimony of Monahan, who served as a branch manager of the Mineola and Huntington branches during the relevant period. He testified that when he supervised assistant branch managers, they typically performed 75 percent sales work and 25

percent management-related work.  (Monahan Dep. Tr. 32:15–21; 40:7–42:15.)  He further

estimated that the inside sales representatives that he supervised spent 100 percent of their time

doing sales work.  (Id. at Tr. 34:12–35:5.)  However, Monahan explicitly testified that he could

only estimate the responsibilities and duties of the employees that "worked for [him]" and that he

did not have any conversations with other branch managers regarding the duties of employees at

other branches.  (Id. at Tr. 42:21–43:9.)  Furthermore, when asked "[a]s far as you know did all

assistant managers at Blackman have the same duties and responsibilities," Monahan responded,

"[n]o."  (Id. at 44:21–25.)  Therefore, the Court finds that, if anything, Monahan's testimony

tends to show that the duties of assistant branch managers and inside sales representatives were

not uniform across all branches of BPS.

Furthermore, Cuff, who was a branch manager of the Mineola and Huntington branches

during the relevant period, testified that to his knowledge, the duties of assistant branch

managers and inside sales representatives are "consistent through all Blackman's branches."

(Cuff Dep. Tr. 77:11–14; 126:2–6.)  Yet it is not clear what the basis of his knowledge is other

than his experience supervising inside sales representatives and assistant branch managers at the

Mineola and Huntington branches.  For example, he did not reference any conversations he had

with other branch managers and had no knowledge of any written list setting forth the duties of

assistant branch managers and inside sales representatives.  (Id. at Tr. 77:19–23.)  Thus, here too,

the Court does not find that Cuff's testimony provides persuasive evidence that the duties of

branch managers and inside sales representatives are consistent across all branches.

Finally, the Plaintiff relies on statements made in his own declaration and the statements

made by opt-in Plaintiff Ruggierio attesting to the purported fact that the duties of assistant

branch managers and inside sales representatives are similar across all branches.  However, as

described above, the Court does not find these declarations to be credible in light of the inconsistent deposition testimony of the Plaintiff and Ruggiero and the lack of personal knowledge on the part of either the Plaintiff or Ruggiero as to the duties of assistant branch managers and inside sales representative at other BPS branches.

The Court also notes that the Defendants attach to their memorandum nine declarations in which current assistant branch managers, in contravention of the declarations by the Plaintiff and Ruggiero, assert that they had significant managerial responsibilities.  (See Hoffman Decl. at ¶¶ 6, 7, 9; Ablorano Decl. at ¶¶ 7, 8, 11; O'Neil Decl. at ¶ 8, 9, 10, 13; Taris Decl. ¶¶ 6, 7, 10; Voulo Decl. at ¶¶ 9, 11, 36; Donlon Decl. at ¶¶ 8, 10, 35; Peppe Decl. at ¶¶ 6, 8, 11; Sexton Decl. at ¶¶ 4, 6, 7; Donaughy Decl. at ¶¶ 7, 10.).   As with the declarations by the Plaintiff and Ruggiero, the Court does not find these declaration to be of significant weight because there is no evidence in the record, such as deposition testimony, to support their assertions and the declarations appear to have been submitted for the express purpose of defeating certification. See Jacob, 289 F.R.D. 408, 421 (S.D.N.Y. 2013) (finding that declarations were not persuasive because "the weight of the evidence does not support these conclusions").

In any event, the Court concludes that the evidence discussed above tends to show that the duties of assistant branch managers were not defined pursuant to a general policy or consistent throughout BPS's twenty branches.  Thus, the issue of whether assistant branch managers were properly classified as exempt from overtime would have to be determined on an employee-by-employee basis.  Such individual determinations are precisely the kind of the determinations that render certification inappropriate. See, e.g., Myers, 624 F.3d at 549 (affirming district court decision to deny certification where the evidence tended to show that the "exemption inquiry [in that case] requires 'an individualized and fact-intensive inquiry' into the

27

job duties of each individual plaintiff to determine whether those duties qualified the individual

station manager as an 'executive' under the applicable regulations"); <u>White</u>, 2011 WL 6140512

at *5 ("[T]he [c]ourt cannot permit class treatment of all DM and ADM overtime claims"

"[where the] evidence spans nine different departments . . . each of which has a distinct set of

concerns and job duties.").

Therefore the Court finds that the Plaintiff, as an assistant branch manager, to be an

atypical and inadequate representative of the class members who are inside sales representatives

and are not subject to the same exemption defense.   Accordingly, the Court concludes that the

Plaintiff has also failed to meet its burden with respect to typicality and adequacy of

representation.

## D. As to the Predominance and Superiority Requirements

Rule 23(b)(3) requires the movant to show that (1) "[c]ommon questions . . .

'predominate over any questions affecting only individual members'" and (2) class resolution

must be "superior to other available methods for the fair and efficient adjudication of the

controversy." <u>Amchem Products, Inc.</u>, 521 U.S. at 620, 117 S. Ct. at 2248.

"Like the commonality inquiry, a court examining predominance must assess (1) the

'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence

could be offered to prove those elements on a class-wide basis or whether individualized proof

will be needed to establish each class member's entitlement to relief.'" <u>Johnson v. Nextel</u>

<u>Commc'ns Inc.</u>, No. 14-454, 2015 WL 897653, at *6 (2d Cir. Mar. 4, 2015) (quoting

<u>McLaughlin on Class Actions</u> § 5:23).  However, predominance requires a further inquiry "into

whether the common issues can profitably be tried on a classwide basis, or whether they will be

overwhelmed by individual issues." <u>Id.</u>  Accordingly, the predominance inquiry is "more

demanding than Rule 23(a)." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)

As described above, the Court finds that the Plaintiff has failed to meet the Rule 23(a) requirement of commonality, typicality, and adequacy of representation.  Therefore, it follows that the proposed class also fails to meet the more demanding requirements of Rule 23(b)(3). <u>See</u> <u>Mazzei v. Money Store</u>, 288 F.R.D. 45, 57 (S.D.N.Y. 2012) ("Furthermore, the individualized inquiry necessary for each class member's breach letter results in a failure of the commonality requirement as well as the predominance prong of Rule 23(b)(3)."); <u>Saleem v. Corporate Transp. Grp., Ltd.</u>, No. 12 CIV. 8450 (JMF), 2013 WL 6061340, at *7 (S.D.N.Y. Nov. 15, 2013) ("It follows from the discussion of commonality above that Plaintiffs' proposed class fails to meet these [predominance] standards.").

**E. As to the Plaintiff's Request For Leave to Refile**

In his reply memorandum in support of the present motion, the Plaintiff requests that "to the extent that [his] motion for conditional certification and notice is granted, but Rule 23 class certification is not granted," that he "be permitted to renew its motion for Rule 23 class certification after class discovery has been conducted."  (The Pl.'s Reply Mem. of Law at 10.)

The Plaintiff offers no legal authority, or other basis, as to why the Court should permit the Plaintiff to renew its motion for certification after further discovery has been conducted in the FLSA § 216(b) collective action.  The Court notes that this case is four years old and that the Plaintiff has had plenty of opportunities to engage in discovery in support of his Rule 23 motion.  To give the Plaintiff a chance to re-file this motion after more discovery would be both unfair and prejudicial to the Defendants, especially,

where, as here, the Plaintiff has offered no basis to believe that additional discovery would reveal any documents that would tend to support certification of a Rule 23 class action. See White. 2011 WL 6140512 at *5 ("The Court cannot certify a class on the basis of a hunch that there exists some corporate document that plaintiffs failed to discover.").  Under these circumstances, the Court declines to grant the Plaintiff leave to renew its motion.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Plaintiff's motion to certify a class action pursuant to Fed. R. Civ. P 23 is denied.

**SO ORDERED.**
Dated: Central Islip, New York
March 31, 2015

_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge