**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
MICHAEL CALLARI, individually and on behalf of
other persons similarly situated who were employed
by BLACKMAN PLUMBING SUPPLY, INC.,
and/or any other entities affiliated with or controlled
by BLACKMAN PLUMBING SUPPLY, INC.,

                              Plaintiffs,                                    **REPORT AND**
                                                                             **RECOMMENDATION**
           -against-
                                                                             CV 11-3655 (ADS) (AKT)

BLACKMAN PLUMBING SUPPLY, INC.,
ROBERT MANNHEIMER, AS CO-EXECUTOROF
THE ESTATE OF RICHARD BLACKMAN, AND
ROBERT A. TEPEDINO, AS CO-EXECUTOR OF
THE ESTATE OF RICHARD BLACKMAN, and
JOHN DOES #1-10,

                              Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiff, Michael Callari ("Plaintiff"), individually and on behalf of other persons

similarly situated, commenced this action against the Defendants, Blackman Plumbing Supply,

Inc. ("BPS"), Richard Blackman ("Blackman") and John Does #1–10 (collectively,

"Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 *et seq.*,

and New York Labor Law ("NYLL"), Article 19 § 663 and Article 6 § 190, for Defendants'

alleged failure to pay overtime wages. *See generally* Complaint ("Compl.") [DE 1].  On

October 26, 2018, the parties entered into a formal written settlement agreement and release

("Settlement Agreement") resolving the claims of the lead Plaintiff Callari and the opt-in

Plaintiffs for $264,400.00.  *See* DE 181.  On November 9, 2018, Judge Spatt conducted a hearing

as to the fairness and reasonableness of the settlement and approved the settlement under the authority of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), but reserved decision as to attorney's fees to be awarded pending a formal application by Plaintiff. *See* DE 183. On May 31, 2019, Plaintiff moved for an award of attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b) and NYLL § 198. *See* Plaintiffs' Notice of Motion for Attorneys' Fees and Costs ("Pls.' Mot.") [DE 197]; Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees and Costs ("Pls.' Mem.") [DE 197-4]. Specifically, Plaintiffs' counsel seeks $333,346.50 in attorneys' fees and $10,860.57 in costs. *See* Declaration of Robert Connolly, Esq. in Support of Motion for Attorneys' Fees and Costs ("Connolly Decl.") [DE 197-1] ¶ 3. Defendants oppose the motion, arguing, among other things, that the fees accrued by Plaintiffs are unreasonable. *See generally* Defendants' Memorandum of Law in Opposition to Motion for Attorneys' Fees and Costs ("Defs.' Opp'n.") [DE 201].

Judge Spatt referred Plaintiff's motion for attorneys' fees and costs to this Court for a Report and Recommendation as to whether the motion should be granted, and the amount of damages and fees to be awarded, if any. *See* DE 198. For the reasons set forth below, this Court recommends to Judge Spatt that Plaintiff's motion for attorneys' fees and costs be GRANTED, in part, and DENIED, in part, to the extent set forth in this Report and Recommendation.


## II.   PROCEDURAL HISTORY

The facts of this case are set forth at length in Judge Spatt's Memorandum of Decision and Order granting, in part, and denying, in part, Defendants' motion for summary judgment [DE 78], familiarity with which is presumed. Therefore, those facts will not be repeated here. Rather, the Court focuses on the work done in this case for which Plaintiffs' counsel now seeks

fees and costs.  The Court points out that the contentiousness of counsel here marked much of the eight-plus year history of this case, resulting in mounting fees which were unnecessary had the attorneys fulfilled their obligations to meet and confer in good faith pursuant to Local Rule 37.3.  This issue will be addressed further on in this Report and Recommendation.

On July 29, 2011, Plaintiff Callari, individually and on behalf of other persons similarly situated, commenced this action against Defendants pursuant to the FLSA and NYLL to recover unpaid overtime wages.  *See generally* Compl. [DE 1].  This Court conducted an Initial Conference on November 8, 2011 and implemented a Case Management and Scheduling Order ("CMSO") setting a discovery end date of August 27, 2012.  *See* DE 8-9.  The parties thereafter engaged in a prolonged course of discovery, some of the details of which are outlined later in this report as those details relate to the fee application.   After a discovery status conference in March 2012, *see* DE 14, Plaintiff filed two discovery motions seeking to compel (1) certain interrogatory responses pertaining to other employees who were similarly situated to Plaintiff and (2) the production of unredacted Department of Labor ("DOL") documents.  *See* DE 16, 17.  Defendants opposed both discovery motions.  *See* DE 19-20.  In addition, Plaintiffs' counsel moved for permission to file replies to the letter motions which the Court denied.  *See* May 25, 2012 Electronic Order.  On August 8, 2012, the Court granted, in part, and denied, in part, Plaintiff's motion seeking certain interrogatory responses.  The Court also denied Plaintiffs' motion seeking the production of certain DOL documents, without prejudice, and with the right to renew if and when Plaintiff moved for conditional certification of a collective action.  *See* DE 24.  That same day, the Court issued an Amended CMSO which extended the discovery deadline to January 18, 2013.  *See* DE 25.

On September 28, 2012, Plaintiffs' counsel filed a "Consent to Join Collective Action" on behalf of opt-in George Ruggiero ("Ruggiero").  *See* DE 26.  Between October 2012 and December 2012, both parties filed several seeking to extend the various discovery deadlines.[1] *See* DE 27-28, DE 30-31, DE 33.  Defendants' counsel notified the Court on October 8, 2012 of the death of Richard Blackman, principal of Defendant Blackman Plumbing Supply, Inc.  *See* DE 27.  Counsel requested a 30-day extension of the discovery deadline which was granted under the circumstances.  *Id*.  Based on several further requests for extensions, some of which involved circumstances resulting from Hurricane Sandy, the Court issued a Second Amended CMSO On November 7, 2012, setting the new discovery deadline at March 8, 2013.  *See* DE 29.

Following the death of then Defendant Blackman, Plaintiff filed a letter motion [DE 34] seeking to substitute as parties the co-executors of the Estate of Richard Blackman, which Defendants opposed [DE 35].  On January 17, 2013, Judge Spatt denied Plaintiff's motion, without prejudice, because it did not comply with Fed. R. Civ. P. 25(a)(1) and 6(b) concerning the proper method of reporting the suggestion of death on the record.  *See* DE 36.  After Plaintiff filed the proper statement, he filed a second motion for substitution of the co-executors on May 7, 2013.  *See* DE 49.  On June 21, 2013, the parties entered into a stipulation substituting Robert Manheimer and Robert A. Tepedino, as Co-Executors of the Estate of Blackman, as Defendants in this action.  *See* DE 57.  The Court "so ordered" this stipulation on June 24, 2013. *See* DE 58.  Thereafter, a variety of communications were filed by counsel dealing with Judge

---

[1]    The Court points out that both parties sought numerous adjournments and extensions of the various pre-trial deadlines in this action, contributing, in part, to the prolongation of the instant action.  *See* DE 27; DE 28; DE 30; DE 45; DE 50; DE 56; DE 62; DE 116; DE 141; DE 148; DE 155; DE 179; DE 197; DE 187-189.

Spatt's Individual Rules concerning the pre-motion conference requirement and the required exchange of Rule 56.1 Statements in order to request a pre-motion conference.

After an extension of several months, Defendants filed their motion for summary judgment on August 22, 2013 seeking dismissal of the Complaint in its entirety. *See* DE 61. Defendants argued, among other things, that: (1) Plaintiff was an exempt employee under the FLSA; (2) Plaintiff and opt-in Plaintiff Ruggiero's federal claims were time-barred; (3) opt-in Plaintiff Ruggiero's federal and state law claims were waived; (4) supplemental jurisdiction over the Plaintiff's remaining state law claims was improper; and (5) Plaintiff should be precluded from making a motion for conditional certification as any such motion at that stage in the litigation would be untimely. *See id*. Plaintiff opposed Defendants' motion for summary judgment. *See* DE 65.

Between May 2013 and September 2013, the parties requested three separate extensions of time to file their joint pre-trial order ("JPTO") and to conduct the Pre-Trial Conference in light of Defendants' pending summary judgment motion. *See* DE 50, 56, 62. After reminding counsel that Judge Spatt does not stay the completion of the pre-trial phase of the case even if a dispositive motion is pending, the Court granted the first two requested extensions but denied the third. The Pre-Trial Conference was conducted on October 7, 2013. *See* September 19, 2013 Electronic Order; DE 64. At the Pre-Trial Conference, the Court noted that "the parties have just begun to discuss whether this case is amenable to settlement" and they stated an intention to "continue those discussions over the next few weeks." *See* DE 64. The Court offered to conduct a settlement conference if both sides wished to pursue that option; however, the parties did not reach out for the Court's assistance. *Id*. On November 12, 2013, the parties filed a Second Amended JPTO after the Court had given counsel a second opportunity to review their exhibits

5

since no objections had been listed. *See* DE 69. The Court accepted the Second Amended JPTO

on November 13, 2013 and closed discovery. *See* November 13, 2013 Electronic Order.

A month later, Plaintiffs' counsel filed a letter to this Court on December 13, 2013

requesting a briefing schedule for Plaintiff's "proposed motion for discovery sanctions and to strike

a portion of the Declaration of Mark Schneider that was submitted in reply and further support of

Defendants' motion for summary judgment." DE 74. Plaintiffs' counsel claimed that Defendants

had attached several exhibits to the Schneider Declaration that had not been produced in discovery.

Defendants opposed the application, arguing among other things, that it was untimely and that

Plaintiffs had never requested the three documents at issue during the course of discovery. DE 75.

Defendants' counsel also pointed out that the summary judgment motion had already been fully

briefed and was pending before Judge Spatt. *Id.*

Six days later, on December 19, 2013, Judge Spatt granted, in part, and denied, in part,

Defendants' motion for summary judgment. *See* DE 78. Plaintiff had submitted a 40-page

attorney declaration in support of its opposition to Defendants' motion for summary judgment

which was rejected by Judge Spatt as an improper attempt to circumvent the Court's rule on page

limits for memoranda of law. *Id.* at 2-3. Ultimately, Defendants' motion for summary judgment

as to the opt-in Plaintiff Ruggiero's FLSA claim was granted. However, summary judgment as

to Ruggiero's NYLL claim was denied. *Id.* Further, Defendants' motion for summary judgment

as to Plaintiff Callari was denied and he was "permitted to proceed with his FLSA claim and

move to certify a collective action [and/ class action] pursuant to [Rule] 23." *Id.*

On January 2, 2014, Plaintiffs requested an extension of time to move for reconsideration

of Judge Spatt's summary judgment decision. *See* DE 79. The Court granted Plaintiffs' request.

DE 80. On February 3, 2014 and February 4, 2014, respectively, Plaintiffs requested two

additional extensions of time [DE 86, 88] to file their reply brief in support of the motion for

reconsideration which Defendants opposed.  *See* DE 87, 89.  The Court denied Plaintiffs' second set of requested extensions on February 6, 2014.  *See* DE 93.  Judge Spatt denied the motion for reconsideration on April 28, 2014.  *See* DE 100.

Plaintiffs then requested an extension of time to move for conditional certification of a collective action under the FLSA and certification of a class action under Rule 23.  *See* DE 95. On April 7, 2014, the Court granted Plaintiffs' request.  *See* DE 96.  Plaintiffs asked for a second extension to file his motion on April 14, 2014.  *See* DE 97.  The Court granted Plaintiffs' second extension request the same day.  *See* DE 98.  On April 17, 2014, Plaintiffs actually filed their motion to conditionally certify a collective action pursuant to § 216(b) of the FLSA and to certify a class action under Fed. R. Civ. P. Rule 23, *see* DE 99, which Defendants' opposed, *see* DE 102.

On July 2, 2014, Plaintiffs requested an extension of time to file their reply brief in support of the motion for collective action certification as well as class certification.  *See* DE 103.  Defendants opposed.  *See* DE 104, 106.  On July 3, 2014, the Court granted Plaintiffs' requested extension but cautioned Plaintiff that this was the final extension.  *See* DE 108. Notwithstanding the Court's cautioning, on July 15, 2014, Plaintiffs requested a third extension to file their reply brief and proceeded to file the reply brief one date late without having yet been awarded such relief by the Court.  *See* DE 110.  Notwithstanding the untimely submission, the Court in its discretion granted the extension *nunc pro tunc*.  *See* DE 112.  Judge Spatt referred the motion for collective action certification to this Court for decision on November 20, 2014. *See* DE 113.

This Court granted, with limitation, conditional certification of a collective action on March 27, 2015.  DE 114.  On March 31, 2015, Judge Spatt denied the Plaintiffs' motion for

class certification pursuant to Rule 23, finding that Plaintiffs failed to meet the requirements of commonality, typicality and adequacy of representation.  DE 115.  Plaintiffs' counsel then moved for reconsideration of that decision before Judge Spatt on April 16, 2015.  *See* DE 121. After considering full briefing on the motion, Judge Spatt denied Plaintiff's motion for reconsideration on December 23, 2015.  *See* DE 124.

    While the motion for reconsideration was pending, Defendants filed a motion seeking to re-open discovery to allow Defendants (1) to conduct deposition and document discovery on each of the prospective opt-in Plaintiffs, and (2) to again amend the JPTO to add the names of nine additional trial witnesses.  DE 116.  With respect to the nine additional witnesses, Defendants' counsel argued that the case had changed from a single plaintiff case to "potentially having to defend at trial the claims of what may be a class of people as defined by the Court in its Order and allegations of improper company-wide policies procedures and practices."  *Id*.  Plaintiffs did not file any opposition to Defendants' letter motion and the Court granted Defendants' motion to re-open discovery and amend the Joint Pre-Trial Order.  DE 125.  The final deadline to complete discovery was set at September 30, 2016 and the deadline to file a second amended JPTO was set at October 28, 2016.  *See* DE 131.

    In April 2016, the parties engaged in motion practice concerning the Notice of Pendency to be sent to the conditionally certified collective.  *See* DE 126.  After judicial intervention, *see* DE 126, the Notice of Pendency was finalized and sent out to 87 members of the collective. Connolly Decl. ¶ 12.  In addition to George Ruggiero, eight other individuals opted-in to the action.  *See* DE 132-140.

    Defendants filed a motion on April 28, 2016 to compel Plaintiffs to execute a second amended JPTO, *see* DE 129, which Plaintiffs opposed, *see* DE 130.  The Court denied Defendants' motion, reasoning that it was premature since discovery was still ongoing.  *See*

DE 131.  A week before the September 30, 2016 deadline, the parties filed a joint request to extend the fact discovery deadline to November 14, 2016 and also sought an extension of the deadline to file a second amended JPTO.  *See* DE 141.  The Court reluctantly granted the extension on September 26, 2016 and cautioned that the deadline would not be extended again. *See* September 26, 2016 Electronic Order.

In October 2016, both parties engaged in motion practice which essentially sought to resolve the scope and amount of discovery each party was permitted to conduct.  *See* DE 142- 146.  On September 25, 2017, the Court issued an Order observing that "the parties continue to have significant difficulty working together to get through the discovery issues in this case and to comply with their obligations under Local Civil Rule 37.3."  DE 152.  The Court also noted that the "ongoing disputes between the parties stems from the fact that plaintiffs' counsel did not move for conditional certification until after the deadlines set in the Case Management and Scheduling Order … for the close of discovery and the filing of the initial joint pre-trial order." DE 152 at 1.  The Court granted, in part, and denied, in part, both parties' discovery motions and reluctantly extended the long-expired discovery deadline to allow for the completion of all discovery by December 21, 2017.  *Id*.  The Court cautioned the parties that the deadlines "would not be extended under any circumstances given the pattern" of delinquency and delay in this case.  *Id*. at 9-10.

On January 31, 2018, the Court held a Pre-Trial Conference to review the parties' second amended JPTO.  *See* DE 154.  However, instead of the submitting a second amended JPTO as directed by the Court, the parties instead opted to rely on the amended JPTO filed in the action four years earlier.  *See* DE 152, 154.  The Court advised counsel that the amended JPTO could not be accepted in its existing form and directed them to file a second amended JPTO which

reflected the various Court rulings made since the first amended JPTO was filed. *See* DE 154. The Court also pointed out to Defendants' counsel that he likely could not maintain certain affirmative defenses listed on the amended JPTO in light of the fact that Defendants never moved to de-certify the collective. *See* DE 154. Defendants' counsel was advised to raise the issue with Judge Spatt for resolution. *Id*. The parties were directed to file a second amended JPTO by March 25, 2018. *See* March 12, 2018 Electronic Order. Counsel did so on March 26, 2018. DE 158. On April 13, 2018, the Court rejected the second amended JPTO because it did not incorporate all of the changes counsel were instructed to make at the January 31, 2018 Pre-Trial Conference. DE 159. Over the next two months, both parties engaged in motion practice regarding disputes which arose from counsels' attempts to draft a second amended JPTO. *See* DE 159-160, 164, 166-171.

Defendants filed a pre-motion conference request to Judge Spatt on April 25, 2018 to discuss their anticipated motion to decertify the collective. DE 165. Judge Spatt denied the request advising that, under his Individual Rules, a pre-motion conference was not necessary for such motions. *See* May 30, 2018 Electronic Order. Although Judge Spatt did not preclude Defendants from moving to decertify the collective, he took note of this Court's concern as to whether "such a motion would … be proper, timely, or procedurally appropriate" at that stage in the litigation. *Id*. On May 31, 2018, the parties filed a second amended JPTO. *See* DE 174. This Court accepted the second amended JPTO on June 4, 2018, closed discovery, and deemed the case trial ready to Judge Spatt. *See* June 4, 2018 Electronic Order.

Judge Spatt held a conference with the parties on October 4, 2018, at which time a settlement was reached in the sum of $264,400.00, subject to a formal written settlement agreement and release being executed. *See* DE 177, 181. Plaintiff Callari's claims were settled

10

for $160,000.  Ruggiero's claims were settled for $80,000.  The balance of $24,400 was distributed among the remaining seven opt-in Plaintiffs in amounts varying from $500 to $15,000.  *See* DE 181.  Although the parties settled the underlying claims of the action, they remained at odds on the issue of attorneys' fees and costs.  *See* DE 177, 183.  Counsel filed a formal written settlement agreement and release ("Settlement Agreement") on October 26, 2018.  DE 181.  The Settlement Agreement provided that "Plaintiff's Counsel shall file an application to the Court seeking an order on the issue of whether Plaintiffs are entitled to recover attorneys' fees and costs, and if so, the amount thereof."  *See* Declaration of James A. Rose, Esq. in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Rose Decl;") [DE 200], Ex. F (Settlement Agreement) [DE 200-6] at 8.  At the conclusion of the November 9, 2018 hearing on the fairness and reasonableness of the settlement, Judge Spatt approved the Settlement Agreement pursuant to the authority of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), but reserved decision regarding the amount of attorney's fees to be awarded pending a formal application by Plaintiff.  *See* DE 198.

On May 31, 2019, Plaintiffs filed their motion for attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b) and NYLL § 198, seeking $344,302.07, comprised of $333,346.50 in attorneys' fees and $10,860.57 in costs.  *See* Pls.' Notice of Mot. [DE 197].  Between October 29, 2018 and May 14, 2019, Plaintiffs' counsel requested nine enlargements of the briefing schedule for the motion for attorneys' fees and costs.  *See* DE 182, 184, 188, 191-196.  The Court granted the requested extensions.  However, after the ninth request, the Court advised that it "will not grant any further extensions of time."  May 15, 2010 Electronic Order.  In support of the motion, Plaintiffs submitted the Declaration of Attorney Robert Connolly, which attached contemporaneous billing records.  Connolly Decl., Ex. A (Billing and Cost Statement)

11

[DE 197-2].  Plaintiffs also submitted the Declaration of Deanna Panico, Esq. in Support of

Motion for Attorneys' Fees and Costs ("Panico Decl.") [DE 197-3].  Panico is an associate at

Bee Ready Fishbein Hatter & Donovan LLP who worked on this case.

Defendants oppose the motion challenging Plaintiff's entitlement to attorneys' fees and

costs and, alternatively, the reasonableness of the amount of fees and costs.  *See generally* Defs.'

Opp'n [DE 201].  With respect to the amount of counsel fees sought, Defendants contend that

any award of attorneys' fees should be limited to approximately $88,045.00 -- 33% of the total

amount recovered ($264,400.00).  *See generally id*.  Defendants further argue, in the alternative,

that Plaintiffs' requested fee award should be reduced, in an amount to be determined by the

Court, to reflect:  (1) improper utilization of experienced counsel for mundane and non-complex

tasks; (2) use of block billing in the contemporaneous time records; (3) vague or incomplete

entries in the contemporaneous time records; (4) Plaintiffs' unsuccessful prosecution of the

FLSA claim for opt-in Plaintiff Ruggiero; (5) Plaintiffs' unsuccessful discovery motions,

motions for reconsideration, motion for class certification under Rule 23, and motions for

extensions of time; and (6) Plaintiffs' failure to settle the action earlier in the case for amounts

similar to those for which Plaintiffs ultimately settled.  *See generally id*.

Judge Spatt referred Plaintiff's motion for attorneys' fees and costs to this Court for a

Report and Recommendation as to whether the motion should be granted, and, if so, the amount

of damages and fees to be awarded.  *See* DE 198.

## III.    DISCUSSION

### A.    Entitlement to Attorneys' Fees and Costs

As a threshold matter, the Court must determine whether obtaining a favorable settlement

that does not expressly entitle a plaintiff to attorneys' fees and costs triggers the fee-shifting

provisions of the FLSA and the NYLL.  Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions.  *See* 29 U.S.C. § 216(b); NYLL §§ 198 (1-a), 663.  The FLSA provides that the court "shall*, in addition to any judgment awarded* to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added).  The NYLL also provides that in "any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee *prevails*, the court shall allow ... all reasonable attorney's fees."  NYLL § 198(1-a) (emphasis added).

Although the FLSA fee-shifting provision does not expressly mention "prevailing party," courts in the Second Circuit typically cite and rely upon prevailing party fee-shifting jurisprudence when adjudicating requests for attorneys' fees and costs under the FLSA.  *See, e.g.*, *Fisher v. SD Prot. Inc.,* 948 F.3d 593, 604, 607 (2d Cir. 2020) (citing and analogizing to case law interpreting other similar fee-shifting statutes in the civil rights context including, but not limited to, *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (seeking attorney's fees under 42 U.S.C. § 1988 which awards the "prevailing party . . . a reasonable attorney's fee as part of the costs"); *Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) (fee request under § 1988) and *Dunlap-McCuller v. Riese Org., et al.*, 980 F.2d 153 (2d Cir. 1992) (same); *Perez v. AC Roosevelt Food Corp*., 744 F.3d 39, 43 (2d Cir. 2013) (citing *Hensley* in FLSA action); *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 151 (2d Cir. 2008) (same); *Pugh v. Meric*, No. 18-CV-3556, 2019 WL 3936748, at *2 (S.D.N.Y. Aug. 20, 2019) (same); *Velasquez v. Digital Page, Inc.*, 124 F. Supp. 3d 201, 203 (E.D.N.Y. 2015) (same); *Mendez v. Radec Corp.,* 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (citing and analogizing *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and*

13

*Human Services*, 532 U.S. 598 (2001) (awarding attorney's fees to "prevailing party" under Fair Housing Amendments Act of 1988 and Americans with Disabilities Act); *see also Kalloo v. Unlimited Mechanical Co. of NY,* 977 F. Supp. 2d 209, 211 (E.D.N.Y. 2013) (observing that "cases determining awards of attorneys' fees under the FLSA rely interchangeably on cases arising under § 1988").

In applying prevailing party fee-shifting jurisprudence to the FLSA, courts in the Second Circuit have consistently held that "[u]nder the FLSA and the NYLL, a *prevailing plaintiff* is entitled to reasonable attorneys' fees and costs." *Fisher,* 948 F.3d. at 600 (emphasis added); *Perez,* 744 F.3d at 43 ("The [FLSA] directs courts to award *prevailing plaintiffs* reasonable attorney's fees and costs.") (emphasis added); *Francois v. Mazer*, 523 Fed. App'x 28, 29 (2d Cir. 2013) ("Reasonable attorney's fees and costs are awarded as a matter of right to a *prevailing plaintiff* in an action under the FLSA or NYLL.") (emphasis added); *Barfield.,* 537 F.3d at 151 ("[T]he FLSA directs courts to award *prevailing plaintiffs* reasonable attorney's fees and costs.") (emphasis added); *Velasquez,* 124 F. Supp. 3d at 203 ("Under the FLSA and NYLL, a *prevailing plaintiff* is entitled to reasonable attorneys' fees and costs.") (emphasis added); *Kahlil,* 657 F. Supp. 2d at 473–74 ("In an action pursuant to the FLSA, a '*prevailing party'* must be awarded reasonable attorneys' fees and costs.") (emphasis added); *Singh v. A & A Mkt. Plaza, Inc.,* No. CV 15-7396, 2019 WL 4861882, at *6 (E.D.N.Y. Sept. 30, 2019) ("Both the FLSA and NYLL provide for *prevailing Plaintiffs* to be awarded attorneys' fees and costs for actions to recover unpaid wages.") (emphasis added).

A plaintiff is a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley,* 461 U.S. at 433; *Andrews v. City of New York,* 118 F. Supp. 3d 630, 637 (S.D.N.Y. 2015) (citation omitted);

*Velasquez*, 124 F. Supp. 3d at 203 n.1 (citation omitted); *Pugh,* 2019 WL 3936748, at *2 ("For purposes of federal statutes with fee shifting provisions such as the FLSA, plaintiffs are the prevailing party 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'") (citation omitted).  "Likewise, to qualify as a prevailing party, a plaintiff must demonstrate a change in the legal relationship between itself and the defendant arising from the resolution of the lawsuit." *Kahlil,* 657 F. Supp. 2d at 473–74 (citation omitted).

Where, as here, plaintiffs "obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees." *Andrews,* 118 F. Supp. 3d at 635; *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *5 (S.D.N.Y. May 5, 2017) (citation and internal quotation marks omitted); *Pocius v. Sec. Auto Sales Inc.,* No. 16-CV-0400, 2018 WL 3999649, at *2 (E.D.N.Y. July 6, 2018), *report and recommendation adopted*, No. 16-CV-0400, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018) (citation omitted).  "[T]he fact that plaintiff prevailed through a settlement rather than through litigation does not weaken plaintiff's claim to fees." *Andrews*, 118 F. Supp. 3d at 635 (citations omitted); *see Velasquez*, 124 F. Supp. 3d at 203 ("A plaintiff involved in litigation ultimately resolved by settlement may still be entitled to an award of attorneys' fees as a prevailing party.") (quoting *Lyte v. Sara Lee Corp.,* 950 F.2d 101, 103–04 (2d Cir. 1991)); *Samborski v. Linear Abatement Corp.*, No. 96-CV-1405, 1999 WL 739543, at *1 (S.D.N.Y. Sept. 22, 1999) ("As plaintiffs have obtained a settlement of $50,000, they ... are prevailing parties entitled to reasonable attorneys' fees and costs.") (citation and internal quotation omitted); *Fraticelli v. MSG Holdings, L.P.,* No. 13-CV-6518, 2018 WL 5004867, at *3 (S.D.N.Y. Oct. 16, 2018)

15

("Even where the plaintiff agrees to a settlement, counsel is still entitled to his or her fees.") (citation omitted)).

The Court recognizes that, most commonly, settling parties in FLSA actions do not dispute whether a plaintiff is entitled to attorney's fees and costs by virtue of obtaining a settlement. When disputes do arise, they generally arise in fee applications submitted after the settlement is approved and involve the amount of the attorney's fees and costs sought. Though uncommon, there have been instances where settling parties in FLSA actions have disputed a plaintiff's entitlement to attorney's fees and costs where, as here, the settlement agreement does not expressly provide that the plaintiff is entitled to fees and costs. *See, e.g., Kahlil,* 657 F. Supp. 2d at 473–74; *Velasquez,* 124 F. Supp. 3d at 203; *Mendez,* 907 F. Supp. 2d at 357; *LaBarca v. GRJH, Inc.,* No. 16-CV-0826, 2018 WL 1136918, at *7 (N.D.N.Y. Mar. 1, 2018). However, courts in the Second Circuit have declined to create such a distinction under those circumstances, reaffirming the principle that a settling plaintiff constitutes a "prevailing party" entitled to attorneys' fees under the FLSA, even if the settlement is silent as to whether the plaintiff was entitled to those fees. *See Velasquez,* 124 F. Supp. 3d at 203, n.1 (finding that settlement which was silent on plaintiff's entitlement to attorneys' fees and costs conferred "prevailing party" status on plaintiff which entitled plaintiff to fees and costs under the FLSA and NYLL); *Mendez,* 907 F. Supp. 2d at 357 (same); *Pocius,* 2018 WL 3999649, at *1-2 (finding that plaintiff constituted a "prevailing party" entitled to attorneys' fees and costs under the FLSA and NYLL notwithstanding any express term in the settlement agreement entitling plaintiff to fees and costs); *see also Kahlil,* 657 F. Supp. 2d at 473–74 (finding that settlement reached through Rule 68 offer silent as to whether the offer included attorney's fees and costs conferred

16

"prevailing party" status entitling plaintiff to fees and costs under the FLSA); *LaBarca.,* 2018 WL 1136918, at *7 (same).

Defendants contend that, based on the plain language of the FLSA and NYLL, a plaintiff must receive a "judgment" to be entitled to attorney's fees and costs under the FLSA and NYLL, and a settlement agreement does not constitute a "judgment." *See* Defs.' Opp'n at 13-17.  To support of this contention, Defendants cite *Bernhard v. Cent. Parking Sys. of New York, Inc.,* 101 F. Supp. 3d 213, 216 (E.D.N.Y. 2015), where the court held that a settlement agreement did not trigger the fee-shifting provision in the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA").  The court in *Bernhard* reasoned that the ERISA statute only provides for attorney's fees and costs when a "judgment in favor of the plan is awarded" and that a settlement does not constitute such a judgment.  *Id*. at 215 (citing 29 U.S.C. § 1132(g)(2)). Although the court in *Bernhard* acknowledged that other courts sitting in the same circuit have concluded that a settling party may be entitled to attorney's fees and costs if that party constituted a "prevailing party," the court rejected adopting such an approach because the phrase "prevailing party" was not expressly contained in the ERISA statute, and the legislative history did not otherwise support such an approach.  *Id*. at 216.

Defendants here request that this Court adopt a similar statutory interpretation for the FLSA and NYLL, which would have the practical effect of precluding FLSA and NYLL cases from prevailing party fee-shifting provisions.  However, the Court is not persuaded that *Bernhard* is instructive with respect to FLSA and NYLL actions.  As discussed *supra*, courts in this Circuit have long relied on prevailing party fee-shifting jurisprudence when adjudicating requests for attorney's fees and costs under the FLSA and NYLL, despite the lack of any express reference to the term "prevailing party" in the FLSA.  Had the applicability of such jurisprudence

17

to the FLSA and NYLL been unresolved, the reasoning in *Bernhard* might have served as useful guidance in determining the issue.  However, that is not the case, and Defendants provide no explanation as to why the Court should depart from the legal principles long established in FLSA cases and adopt those asserted in ERISA cases.  Absent any legal, factual, or policy reason to diverge from the legal principles routinely applied to the FLSA's fee-shifting provision, this Court declines to do so.

Moreover, as it specifically relates to the NYLL, unlike the ERISA statute, the plain language of the NYLL's fee-shifting provision expressly entitles an employee who "prevails" on a wage claim to attorney's fees and costs.  *See* NYLL § 198(1-a) ("[A]ny action … upon a wage claim by an employee … in which the employee *prevails*, the court shall allow ... all reasonable attorney's fees.") (emphasis added).  Consequently, prevailing party fee-shifting jurisprudence is applicable to the NYLL rendering any analogy to *Bernhard* inapposite.

For these reasons, this Court finds that Plaintiffs constitute "prevailing parties" by virtue of having obtained a favorable settlement and are entitled to an award of reasonable attorneys' fees and costs under the FLSA and NYLL.  *See Andrews,* 118 F. Supp. 3d at 634–35 ("Where plaintiffs obtain a favorable settlement in an action brought pursuant to the FLSA, they constitute prevailing parties and are entitled to attorney's fees."); *Mendez*, 907 F. Supp. 2d at 356 ("The parties disagree whether the FLSA requires a plaintiff to be a "prevailing party" for the Court to award attorneys' fees and whether Plaintiffs have met the prevailing party standards. … [T]he Plaintiffs were successful in obtaining a judicially approved settlement of their claims from the Defendants, … [t]herefore, having prevailed, Plaintiffs are entitled to an award of reasonable attorneys' fees.).

### B.   Reasonableness of Attorneys' Fees

In determining a reasonable attorneys' fees award, both the Supreme Court and the Second Circuit have held that "the lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- creates a 'presumptively reasonable fee.'"[4]  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007)).  In calculating the presumptively reasonable fee, the court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay.  *Arbor Hill*, 522 F.3d at 184.  "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended."  *Pinzon v. Paul Lent Mech. Sys.,* No. 11–CV–3384, 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), *report and recommendation adopted,* No. 11–CV–3384, 2012, WL 4174410 (E.D.N.Y. Sept. 19, 2012).  These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill,* 522 F.3d at 184.

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged.  *See N.Y. State Ass'n for Retarded*

19

*Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983). Ultimately, "[t]he reasonableness of an attorney's requested fees is a matter within the district court's discretion." *Bond v. Welpak Corp.*, No. 15-CV-2403, 2017 WL 4325819, at *4 (E.D.N.Y. Sept. 26, 2017), *appeal dismissed* (Apr. 9, 2018).

### 1. The Issue of Proportionality

Since this issue had yet to be resolved by the Second Circuit at the time this motion for fees was filed, both parties devoted a substantial portion of their briefs to discussing whether an award of attorneys' fees should be limited to 33% of the settlement amount. *See* Pls.' Mem. at 6-14; Defs.' Opp'n at 13-17. Recently, however, the Second Circuit in *Fisher v. SD Prot. Inc* laid the debate to rest and rejected the notion that a fee may be reduced "merely because it would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d. at 603-604. The Second Circuit found that a percentage cap on attorneys' fees in FLSA actions stood at odds with the remedial goals of the FLSA and would "impede Congress's goals by discouraging plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation is high." *Id*. Although recognizing that the proportion of fees may be relevant in considering the reasonableness of an award in some cases (*i.e.*, multi-million dollar securities class action involving a common fund), the Second Circuit clarified that there is "no explicit limit on attorneys' fees in FLSA actions" and instructed that "district courts should not, in effect and practice, implement such a limit." *Id.* at 603; *see also Fisher* at 603-604 ("In most FLSA cases, it does not make sense to limit fees to 33% of the total settlement. FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries.").

20

Notwithstanding its rejection of a proportionality limit in FLSA actions, the Second

Circuit reiterated a district court's discretion to set attorneys' fees as it reasonably sees fit when

presented with a fee application separately made after a plaintiff has prevailed through litigation

or settlement.  *Id.* at *606 (citing *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-*

*ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its

discretion and use a percentage deduction as a practical means of trimming fat from a fee

application.")).  With these principles in mind, the Court will evaluate the reasonableness of the

requested attorneys' fees without using proportionality as an outcome determinative factor.

### 2.    Reasonableness of Hourly Rate

For purposes of the lodestar, "[a] reasonable rate is the rate that a reasonable, paying

client would be willing to pay."  *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y.

2014) (quoting *Arbor Hill,* 522 F.3d at 184); *Tianjin Port Free Trade Zone Int'l Trade Serv. Co.,*

*Ltd. v. Tiancheng Chempharm, Inc*., 17-CV-4130, 2019 WL 4888663, at *2 (E.D.N.Y.  Sept. 30,

2019).  Courts in the Second Circuit adhere to the forum rule, "which states that a district court

should generally use the prevailing hourly rates in the district where it sits."  *Joseph v. HDMJ*

*Rest., Inc.*, 970 F. Supp. 2d 131, 155 (E.D.N.Y. 2013) (citing *Simmons v. N.Y. City Transit*

*Auth.,* 575 F.3d 170, 176 (2d Cir. 2009)); *Zuffa, LLC v. South Beach Saloon, Inc.*, CV 15-6355,

2019 WL 1322620, at *6 (E.D.N.Y.  Mar. 6, 2019).  In the Eastern District of New York,

prevailing rates range from $300 to $400 per hour for experienced attorneys, $200 to $300 per

hour for senior associates, and $100 to $150 per hour for junior associates.  *See Official Comm.*

*of Unsecured Creditors of Exeter Holdings, Ltd. v Haltman*, CV 13-5475, 2018 WL 7291396, at

*5 (E.D.N.Y. Aug. 24, 2018); *Mondragon v. Keff*, 15-CV-2529, 2019 WL 2551536, at *12

(S.D.N.Y.  May 31, 2019), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y.

June 20, 2019); *Xin Long Lin v. New Fresca Tortillas*, No. 18-CV-3246, 2019 WL 3716199, at

*8 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y.

May 28, 2019);  *Kizer v. Abercrombie & Fitch Co.*, CV 12-5387, 2017 WL 9512408, at *8

(E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y.

Aug. 09, 2017); *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at

*8 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053

(E.D.N.Y. May 27, 2016); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-

5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).  Courts in this

district have awarded rates between $75 to $100 per hour for work performed by

paralegals.  *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*, No. 09-CV-3855,

2018 WL 1701944, at *5 (E.D.N.Y. Mar. 31, 2018) (collecting cases); *Douyon v. NY Med.

Health Care, P.C.*, 49 F. Supp. 3d 328, 343 (E.D.N.Y. 2014) (finding $90 to $100 hourly rate

reasonable for paralegals); *Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*,

12-CV-272, 2019 WL 2526087, at *5 (E.D.N.Y. June 19, 2019) (finding that $85 hour late for

paralegals was reasonable); *Campa Flores v. New Sunstone Mexican Food, Inc.*, 17-CV-2941,

2018 WL 6840081, at *6 (E.D.N.Y. Sept. 13, 2018) (finding billing rate of $75 hourly

appropriate for paralegals).

"Some judges 'have recognized slightly higher ranges in this district of $300–$450 per

hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior

associates.'"  *Safeco Ins. Co. of Am. v. M.E.S., Inc.,* 09-CV-3312, 2018 WL 2766139, at *7

(E.D.N.Y. June 8, 2018) (quoting *Small v. New York City Transit Auth.*, No. 09-CV-2139, 2014

WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014)); *see Hormel Foods Sales, LLC v. Ship Side Food

Serv., Inc.,*16-CV-1595, 2018 WL 3202076, at *2 (E.D.N.Y. Mar. 23, 2018);  *Nicaisse v.*

*Stephens & Michaels Associates, Inc.*, No. 14-CV-1570, 2016 WL 4367222, at *4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570, 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016).

Although the Second Circuit has not recently revisited the issue of what constitutes a reasonable fee within this district since its discussion in *Konits v. Karahalis*, 409 Fed. App'x 418, 422–23 (2d Cir. 2011) (summary order) -- which affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour -- a number of courts within this district continue to rely, in part, on *Konits* in determining the appropriate range of fees. *See Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *11 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016) (relying, in part, on *Konits* and finding that "the prevailing hourly rate for partners in this district is between $300 and $400); *Valdez*, 2016 WL 3079028, at *8 (same); *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429, 2016 WL 7167955, at *9 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted sub nom. Ira Litkofsky v. P & L Acquisitions LLS*, No. 15-CV-5429, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (same).

Plaintiffs seek a rate of $425.00 per hour for Partner Robert Connolly. *See* Connolly Decl. ¶ 19. Attorney Connolly, a graduate of St. John's University Law School, was admitted to practice law in the State of New York in 1994. *Id.* ¶ 23. He has been practicing law for 25 years and has appeared as lead attorney in more than 50 federal cases in the Eastern and Southern Districts of New York according to his Declaration. *Id*. ¶ 24. The bulk of those cases have been related to labor and employment matters where Attorney Connolly has represented defendants in such actions. *Id*.

Since 2000, Attorney Connolly has been practicing primarily labor and employment law. *Id*. ¶ 28.  In 2013, he opened his own law firm but has remained "Of Counsel" to the law firm of Bee Ready Fishbein Hatter & Donovan, LLP ("Bee Ready").  *Id*. ¶ 30.  Attorney Connolly directs the Court's attention to *Martinez v. Ivy League School Inc., et al.*, No. 15-CV-7238 (E.D.N.Y. July 18, 2016) where the district court approved an award of $425 per hour in fees for Attorney Connolly in an FLSA action.  *Id*. ¶ 26.  However, unlike the instant case, the attorneys' fees and costs requested in *Martinez* were negotiated between counsel for the parties and purportedly were not part of the total wages agreed upon by counsel.  The attorneys' fees therefore were unopposed and were incorporated into the settlement agreement.  That is not the case here and, as such, the consideration applied by the Court is different from that assessed by the Second Circuit recently in *Fisher*.  *See Fisher v. SD Prot. Inc.,* 948 F.3d at 606 ("Where the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, however, the inquiry is different as the settlement is submitted for approval, not adjustment or revision.").

With respect to senior associate Evelyn Gross who no longer works at Bee Ready, Plaintiffs seek an hourly rate of $225.  *See* Connolly Decl. ¶ 35.  Attorney Gross, a graduate of Hofstra University School of Law, was admitted to practice in the State of New York in 2005. *Id*.  She handled various types of litigation while at Bee Ready and was a sixth-year litigation associate when she worked on this case.  *Id*.

Plaintiffs seek a rate of $150 per hour for junior associate Deanna D. Panico.  *See* Panico Decl. [DE 197-3] ¶ 34.  Attorney Panico, a graduate of St. John's University Law School, was admitted to practice law in the State of New York in 2011.  *Id*. ¶¶ 3-4.  When Attorney Panico joined Bee Ready, she billed at an hourly rate of $225.  At the time she was involved in this

24

action, Attorney Panico had appeared in approximately eight federal cases in New York, two of which were FLSA cases.  Plaintiffs seek a reduced rate of $150 for Attorney Panico.  *Id.* ¶ 9; Connolly Decl. ¶ 34; Pls.' Mem. [DE 197-4] at 11.  Lastly, Plaintiffs seek a rate of $70 for work performed by an unidentified paralegal.  *See* Connolly Decl., Ex. A at 62.

In addition to the attorneys' respective experience levels, the Court must "take into account case-specific factors to help determine the reasonableness of the hourly rate[ ]."  *Pinzon*, 2012 WL 4174725, at *5.  In considering the *Arbor Hill* and *Johnson* factors identified above, the Court finds that legal questions in the instant action were somewhat more involved than those typically experienced in an FLSA/NYLL litigation, but yet were not so complicated that hourly rates should be increased on that basis.  Defendants challenged:  (1) Plaintiff's status as a non-exempt employee under the executive employee, administrative, and combination exemption; (2) the method of calculating the overtime rates for the opt-in Plaintiffs and lead Plaintiff;  (3) and the viability of certain wage claims under the statute of limitations and waiver doctrine.  *See generally* Memorandum of Law in Support of Defendants' Mot. for Summ. J. [DE 61] at 10; *Encalada v. Baybridge Enters. Ltd.*, No. 14-CV-3113, 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014), *aff'd* 612 Fed. App'x 54 (2d Cir. Sept. 9, 2015) (noting that "[t]here are some, relatively few, FLSA cases that raise complex issues like exemptions, coverage, collective action notification, classification, or statutory interpretation.).  Plaintiffs' counsel defended nine depositions, conducted discovery for nine opt-in Plaintiffs as well as the lead Plaintiff, opposed Defendants' summary judgment motion, briefed motions to conditionally certify a collective action under the FLSA and to certify a class action under Rule 23, and negotiated a favorable settlement on behalf of each Plaintiff.

Having considered (1) the parties' respective arguments, (2) Plaintiffs' submissions in support of the hourly rates requested by counsel, (3) the respective experience of each attorney, (4) the overall complexity of the matters at issue in this case, and (4) this Circuit's adherence to the forum rule, the Court finds that a presumptively reasonable rate for Attorney Connolly is $380.00 per hour while a presumptively reasonable rate for Attorneys Gross and Panico are $200 and $150, respectively.   The Court further finds reasonable an hourly rate of $70 for the paralegal.

### 3.  Reasonableness of Hours Expended

Having determined the presumptively reasonable hourly rate for each attorney who has worked on this matter, the Court turns its attention to whether the overall number of hours being claimed is reasonable.  A party seeking to recover attorneys' fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable. *See N.Y. State Ass'n for Retarded Children,* 711 F.2d at 1139.  An application for attorneys' fees must be supported "by accurate, detailed, and contemporaneous time records."  *La Barbera v. ASTC Labs, Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010); *see also Cabrera v. Canela*, 14CV4874, 2019 WL 5693739, at *1 (E.D.N.Y. June 20, 2019) (finding that the time and billing records submitted by counsel satisfied the requirement of accurate, detailed and contemporaneous time records); *Gesualdi v. Gen. Concrete, Inc.*, No. 11-CV-1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances.").  Contemporaneous time records submitted in support of an application need not contain great detail so long as they identify the general subject matter of time expenditures.  *See Perdue v. City Univ. of N.Y.*, 13 F. Supp. 2d 326, 345 (E.D.N.Y. 1998); *Pocius v. Sec. Auto Sales Inc.,* 16-CV-400, 2018 WL 3999649, at *5 (E.D.N.Y. July 6, 2018),

*report and recommendation adopted,* 16-CV-0400, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018).  "Hours that are 'excessive, redundant, or otherwise unnecessary' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Dagostino v. Computer Credit, Inc.,* 238 F. Supp. 3d 404, 413 (E.D.N.Y. 2017) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *see Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

Plaintiffs have submitted contemporaneous times records in support of their request for attorneys' fees in the amount of $326,782.50 for work performed as follows:  774.30 hours for Attorney Connolly; 14.4 hours for Attorney Gross; 17.4 hours for Attorney Panico[2]; and 10.2 hours for the paralegal.  *See* Connolly Decl. [DE 197-1] ¶ 19.  Defendants oppose Plaintiffs' requested attorneys' fees arguing that the hours billed by Plaintiffs' counsel are unreasonable and should be reduced.  *See generally* Defs.' Opp'n.

Upon review of the history of this action and the contemporaneous time records, the Court finds that the hours billed in this matter are not reasonable and warrant reduction for several reasons.  First, Attorney Connolly performed the bulk of the daily litigation tasks in this action for the last eight years, billing at a partner's rate for tasks that could have and should have

---

[2]       The contemporaneous billing records reflect that Attorney Panico billed $2,912.50 in fees; however, Plaintiffs noted a billing error with one of Attorney Panico's time entries resulting in an improper increase of $302.50 in her fees.  *See* Connolly Decl. ¶ 19. Although Plaintiffs reflected this error in the total fees requested, they did not do so for fees requested for Attorney Panico.  *Id*.  Based on the hourly rate ($150) requested for Attorney Panico and the hours of work performed (17.4), the fees requested for Attorney Panico should be listed as $2,610.00, not $2,912.50 as indicated by Plaintiffs.

been performed by an associate or even clerical staff.  For instance, Attorney Connolly drafted

and reviewed the pleadings in this action (*i.e.* summons, civil cover sheet, complaint, answer),

routinely conducted legal research and reviewed case law, drafted motions papers, drafted and

reviewed discovery and responses to discovery, drafted simple letters to the Court seeking,

among other things, extensions of deadlines, drafted notices, and processed opt-in information.

*See e.g., Lane Crawford LLC v. Kelex Trading (CA) Inc.,* 12-CV-9190, 2013 WL 6481354 at *9

(S.D.N.Y. Dec. 3, 2013) (finding reduction warranted for hours billed at partner rates including

"drafting and revising civil cover sheet," drafting "standard forms for service," and "reviewing

court orders"), *report and recommendation adopted,* 12-CV-9190, 2014 WL 1338065 (S.D.N.Y.

Apr. 3, 2014); *Harrell v. City of New York*, No. 14-CV-7246, 2017 WL 9538163, at *9

(S.D.N.Y. July 20, 2017), *report and recommendation adopted as modified sub nom. Calvo v.

City of New York,* No. 14-CV-7246, 2017 WL 4119280 (S.D.N.Y. Sept. 15, 2017) ("[L]egal

research is generally considered to be work that is capable of being performed by more junior

attorneys and that should not be billed at partner-level rates"); *Bridges v. Eastman Kodak* Co.,

No. 91-CV-7985, 1996 WL 47304, at *9 (S.D.N.Y. Feb. 6, 1996) (reducing hourly rate by 50%

for time devoted to legal research).  Attorney Connolly also routinely reviewed electronic orders

and case management orders, filed documents on ECF himself, arranged for the service of

motions and discovery, and conducted other general tasks that should have been conducted by a

paralegal.  *See Lucerne Textiles, Inc. v. H.C.T. Textiles Co.,* 12-CV-5456, 2013 WL 174226 at *9

(S.D.N.Y. Jan. 17, 2013) (finding reduction warranted for entries billed at partner rates including

"receiving and reviewing scheduling order," "receiving Certificate of Default," and "receiving

and reviewing inquest order"), *report and recommendation adopted,* 12-CV-5456, 2013 WL

1234911 (S.D.N.Y. Mar. 26, 2013); *DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, 2014 WL

3696020, at *9 (E.D.N.Y. July 22, 2014) ("Courts may ... deduct time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents.") (citation and internal quotation marks omitted); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 255 (S.D.N.Y. 2012) ("A court may reduce requested fees if the attorneys' ... requests reflect work that could or should have been completed by a paralegal or secretary.").

Attorney Gross and Attorney Panico were utilized sparingly during this litigation while Attorney Connelly conducted the bulk of tasks that could have been handled by an associate under his supervision. *See De La Paz v. Rubin & Rothman, LLC*, No. 11-CV-9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013) ("Uniform percentage cutbacks are also warranted where, as here, attorneys seek to recover for time spent completing administrative tasks or work that should have been performed by lower-billing attorneys."). This "unreasonable allocation of the litigation tasks involved" resulted in excessive billing, which warrants a reduction in fees. *Microsoft Corp. v. Computer Care Ctr., Inc .,* No. 06-CV-1429, 2008 WL 4179653 at *15–16 (E.D.N.Y. Sept. 10, 2008) ("[T]he litigation was handled virtually single-handedly by ... a partner ... [who] performed nearly all the routine daily litigation tasks in this action. Thus, [he] billed at a partner's rate for a variety of tasks that could have been performed by an associate or even clerical staff.... [Plaintiff's attorneys'] fees should be significantly reduced."); *Chavez v. MCS Claim Services, Inc.*, 2016 WL 1171586, at *5 (E.D.N.Y. March 23, 2016) (reducing total hours by 30% since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate"); *Video Aided Instruction, Inc. v. Y & S Express, Inc.,* No. 96-CV-0518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's hours by 50% where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Second, the time expended by Attorney Connolly on various tasks was excessive.  For instance, the firm expended 23.3 hours in preparing the original Complaint, as follows:

| DATE | DESCRIPTION | HOURS | AMOUNT | |
|---|---|---|---|---|
| Mar-04-11 | Discuss relevant facts with Michael Callari and draft notice regarding same; Review applicable law in preparation of drafting complaint, review notes for factual allegations necessary for complaint; draft complaint. | 3.70 | 1,572.50 | RC |
| Mar-05-11 | Review of file and conduct research regarding FLSA's retail establishment exception; draft memo regarding same and determine applicability to case at bar; research regarding administrative employee exception to FLSA; draft complaint. | 4.20 | 1,785.00 | RC |
| Mar-06-11 | Draft review and revise complaint | 5.70 | 2,422.50 | RC |
| Mar-07-11 | Review of file including draft complaint; telephone conversation with M. Callari regarding complaint and revise complaint accordingly, including relevant factual issues and e-mail draft of complaint to Mr. Callari. | 1.50 | 637.50 | RC |
| Mar-09-11 | Telephone conversation with M. Callari regarding complaint. | 0.20 | 85.00 | RC |
| Mar-11-11 | Review and revise complaint. | 1.20 | 510.00 | RC |

[ continued ]

30

| | | | | |
|---|---|---|---|---|
| Apr-06-11 | Review of file and draft civil cover sheet. | 0.70 | 297.50 | RC |
| Jun-17-11 | Review of file and intra-office consult with E. Gross regarding issues concerning multi-district litigation. | 0.50 | 212.50 | RC |
| | Review/analyze issue concerning multi-district litigation, as defendants have locations in NJ and PA. | 1.70 | 382.50 | EG |
| Jun-21-11 | Receipt and review of e-mail from E. Gross regarding memo concerning multi-district litigation. | 0.20 | 85.00 | RC |
| | Draft/revise Memorandum to RC regarding Multidistrict litigation | 1.50 | 337.50 | EG |
| Jul-05-11 | Draft/revise waiver of service form with accompanying attachment | 1.00 | 225.00 | EG |
| Jul-28-11 | Final review of complaint, civil cover sheet, and waiver documents for filing and service. | 1.20 | 510.00 | RC |

Connolly Decl., Ex. A at 2-3.  In examining the original Complaint, the Court finds that the

contents are reflective of the standard language utilized in FLSA/NYLL actions, including many

boilerplate allegations.   The bulk of the hours claimed were expended by Attorney Connolly,

including time entered for preparing and reviewing the civil cover sheet, at an hourly rate of

$425.   This is just one example of excess as well as a partner performing paralegal-like tasks.

The Court finds that the time for which reimbursement is sought here is excessive and

unwarranted.  *See Sevilla v. Nekasa Inc.,* No. 16-CV-2368, 2017 WL 1185572, at *8 (S.D.N.Y.

Mar. 30, 2017) (finding that eight hours spent on a routine FLSA/NYLL complaint is excessive,

particularly for a law firm that routinely handles such cases.).

    One of the more egregious examples of excessive hours expended in this action involves

dispositive motion practice.  Attorney Connolly billed approximately 76 hours for drafting an

attorney declaration submitted in support of Plaintiffs' opposition to Defendants' motion for

summary judgment.  Connolly Decl., Ex. A. at 19-22.  This declaration was ultimately rejected

31

and not considered by Judge Spatt on the grounds that it constituted an improper attempt to circumvent the page limitations for memoranda of law. *See* DE 78 at 3; *Pocius*, 2018 WL 3999649, at *5 (reducing hours spent on interrogatories which were precluded under a stipulation executed by the parties and so ordered by the court).

In addition, Attorney Connolly billed approximately 33.3 hours to prepare Plaintiffs' two motions to substitute the Co-Executors of the Blackman Estate after Defendant Blackman's death and to file the stipulation of substitution. Connolly Decl., Ex. A at 13, 15-18. Initially, Attorney Connolly billed approximately 10.6 hours to conduct legal research on this issue and to prepare Plaintiffs' letter motion seeking the substitution. *Id*. Notwithstanding the asserted legal research purportedly performed in preparation for what should have been a simple motion, the motion was denied without prejudice because it was procedurally defective in several respects. *See* DE 36. Thereafter, Attorney Connolly spent approximately 21.8 additional hours for further legal research to prepare Plaintiffs' second motion to substitute the Co-Executors of the Blackman Estate and 0.9 hours to prepare the stipulation of substitution. *See* Connolly Decl., Ex. A at 12-15. Although the Court recognizes that the need to file these motions arose from Defendants' failure to initially stipulate to the substitution, a significant portion of the time spent on the motions was duplicative and excessive. Having already drafted a letter motion and conducted the requisite legal and factual research for the initial motion to substitute, the Court finds that the time billed for both motions was excessive.

Moreover, the time Attorney Connolly billed in connection with numerous requests for extensions and adjournments was generally excessive. *See DeMarco,* 2014 WL 3696020, at *9 ("Likewise, fees should not be awarded for time expended … on requests for adjournments or extensions of time."); *Bridges,* 102 F.3d at 59 (affirming reduction of attorneys' fees due to,

among other things, time spent requesting extensions); *Soler v. G & U, Inc.,* 801 F. Supp. 1056, 1063 (S.D.N.Y. 1992) (excluding from award of attorney's fees "time spent by … attorneys … seeking adjournments and extensions.").  While requests for extensions of time unavoidably arise in protracted litigation such as this, the frequency with which Plaintiffs' counsel requested such extensions went well beyond the norm.  Indeed, from 2012 to 2014 and 2018 to 2019, Plaintiff requested a total of 19 extensions of the briefing deadlines for various motions.  *See* DE 15, 38, 79, 82, 86, 88, 95, 97, 103, 110, 182, 184, 188, 192-196, 199.  On several occasions, Plaintiffs' counsel proceeded to request extensions after the Court cautioned that no further extensions would be granted.  *See* DE 110, 112, 202; July 31, 2019 Electronic Order.  While Plaintiffs' counsel did not bill for all of the requested extensions and voluntarily excluded a total of 1.8 hours billed on the opposed requests, several related time entries still remain which warrant reduction.  *See, e.g.*, 4/12/12 Entry (0.4 hours for communicating with opposing counsel regarding extension of time for Plaintiffs to file motion to compel); 4/13/12 Entry (0.6 hours for drafting correspondence to court requesting extension of time to file motions to compel discovery); 4/8/13 Entry (0.7 hours for drafting application to Magistrate Judge Tomlinson regarding extension of time to file dispositive motions).

Third, time expended by Attorney Connolly on other aspects of this case was duplicative and inefficient.  *Siegel v. Bloomberg L.P.,* No. 13-CV-1351, 2016 WL 1211849, at *13 (S.D.N.Y. Mar. 22, 2016) ("[C]ourts routinely apply percentage reductions to requested attorneys' fees based on the performance of inefficient, duplicative, or unnecessary work.").  Specifically, the delay of Plaintiffs' counsel in moving for conditional certification under the FLSA and certification of the class action under Rule 23 until *after* the close of discovery led to work which could have been avoided had Plaintiffs efficiently managed this action.  A timely

motion for conditional certification would have (1) obviated the time expended on briefing

Plaintiffs' entitlement to file such a motion *during* dispositive motion practice; (2) rendered

unnecessary the re-opening of discovery *after* dispositive motion practice; (3) rendered

unnecessary the amendment of the JPTO after discovery was re-opened; (4) obviated the need to

conduct an additional Pre-Trial Conference after discovery was re-opened; and (5) prevented

piecemeal discovery motion practice which could have been resolved with the parties' initial

discovery disputes.

      Fourth, the time records reveal numerous instances of "block billing." "While 'block

billing is not prohibited in this Circuit' ... [it] renders it difficult to determine whether, and/or the

extent to which, the work done by [the] attorneys is duplicative or unnecessary." *Sea Spray*

*Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 277 F. Supp. 2d 323, 325–26 (S.D.N.Y. 2003)

(quoting *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 427 (S.D.N.Y. 1999)).  For example, an

entry for 4.4 hours of work performed on May 24, 2012 by Attorney Connolly reads as follows:

"Review cases cited in Defendants' opposition papers and affidavit of Susan Cook; telephone

conversation with Mr. Callari regarding Susan Cook's affidavit and draft notes regarding same;

draft letter application to Court seeking leave to file a reply to Defendants' opposition." *See*

Connolly Decl., Ex. A at 9.  No delineation of the time spent on each of these tasks was

provided.  Attorney Connolly routinely billed for multiple tasks (*i.e.,* legal research, telephone

call/conference, and drafting) in a single block time entry.  The following examples illustrate this

practice:

| Apr-30-12 | Review, revise, finalize, and file motion to compel production of DOL documents without redations of information from documents for which no privilege is asserted; telephone conversation with Mr. Callari regarding final version of his declaration and revise declaration accordingly; Review, revise, finalize, and file motion to compel responses to interrogatories regarding information related to putative class members, including review of supporting exhibits for both motions to compel. | 3.80 | 1,615.00 | RC |

*   *   *

| Oct-11-17 | Receipt and review of correspondence from opposing counsel regarding defendants third supplemental responses to plaintiffs first request for the production of documents and defendants supplemental response to plaintiffs first set of interrogatories; review of relevant discovery previously produced by the defendants, as well as notes based on discussions with opt-plaintiffs; draft notes regarding deficiencies in defendant's responses. | 3.70 | 1,572.50 | RC |

By grouping together various tasks in a single entry, Plaintiffs' counsel makes it "difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) (citation omitted). The entries the Court finds most problematic are those covering the period from October 8 – 18, 2013. Attorney Connolly's time entry for October 8, 2013 reads as follows:

| Oct-08-13 | Review of defendants motion for summary judgment, including memorandum of law, 56.1statement, and declaration of James Rose; draft declaration in opposition, review all exhibits to motion, as well as document produced in discovery and deposition transcripts. | 4.10 | 1,742.50 | RC |

What the Court finds most troubling is that for the following ten time entries by Attorney Connolly, the language of each entry is identical to that noted above for October 8, 2013. Not a word varies. Moreover, the hours for each of those 11 entries (4.1, 3.3,3.5, 5.8, 2.5, 2.0, 6.2, 3.9, 6.2, 5.9, 4.4) total 47.8 hours, which does not even come close to the total hours entered by Plaintiffs' counsel on the summary judgment motion. *See Harrell*, 2017 WL 9538163, at *13 ("[E]ach of the attorneys who kept time records here engaged in the practice of block billing, meaning that they clustered different types of tasks, such as legal research, drafting (sometimes of different papers), and/or conferences into the same time entries, without breaking out the amount of time spent on each particular task."); *see Bond,* 2017 WL 4325819, at *8 (reducing fees by thirty five percent for, among other things, block billing); *Murphy v. Lajaunie,* No. 13-CV-6503, 2018 WL 7968908, at *12 (S.D.N.Y. Feb. 2, 2018), *report and recommendation adopted,* No. 13-CV-6503, 2019 WL 642695 (S.D.N.Y. Feb. 15, 2019) (reducing fees by five percent for block billing); *Molefi v. Oppenheimer Tr.,* No. 03-CV-5631, 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007) (reducing fees by fifteen percent for, among other things, block billing).

Fifth, Plaintiffs were unsuccessful in moving to certify a class action under Rule 23. Generally, "the denial of a class or collective action certification motion justifies a reduction in fees, given the impact that such certification may have on the quantity and quality of the available relief." *Siegel v. Bloomberg L.P.,* No. 13-CV-1351, 2016 WL 1211849, at *10 (S.D.N.Y. Mar. 22, 2016) (citing *Barfield,* 537 F.3d at 152). The "most critical factor" in determining what is a reasonable attorney's fee "is the degree of success obtained" by the plaintiff. *Barfield,* 537 F.3d at 152 (citations omitted). In *Barfield,* the Second Circuit affirmed a 50% reduction in the fees sought by the plaintiff in an FLSA case in light of the plaintiff's

36

failure to secure certification as a collective action, which was the "primary aim" of the litigation. *Id.* at 152. Following *Barfield,* courts in the Second Circuit have routinely reduced attorneys' fees not only for unsuccessful collective action motions but also for unsuccessful class certification motions. *See Custodio v. American Chain Link and Construction, Inc.,* No. 06-CV-7148, 2014 WL 116147, at * 2 (S.D.N.Y. Jan.13, 2014) (reducing hours spent on an unsuccessful class certification motion); *see Siegel,* 2016 WL 1211849, at *10 (same); *Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5, 13 (S.D.N.Y. June 12, 2015) (same).

Although Plaintiffs were successful in moving for conditional certification of the collective action – albeit after the close of discovery -- their failure to obtain class certification under Rule 23 limited the action to those who affirmatively opted into the FLSA collective, thereby significantly reducing Plaintiffs' possible recovery as compared to what might have been recovered if class certification had been granted. *See, e.g., Velasquez,* 124 F. Supp. 3d at 205; *Siegel,* 2016 WL 1211849, at *10. As such, the denial of class certification, among other things, limited the degree of success obtained by Plaintiffs which warrants a reduction in the fees requested. However, since Plaintiffs sought both conditional certification of the collective and class certification in a single motion, an across-the-board reduction of fees is more appropriate rather than deducting the hours attributable to the unsuccessful class certification motion only. *See Velasquez,* 124 F. Supp. 3d at 205 (reducing attorneys' fees to 60% of settlement amount, in part, for unsuccessful motion for Rule 23 certification made in conjunction with a motion for collective action certification); *Siegel,* 2016 WL 1211849, at *10 (reducing relevant time entries by 50% where class certification was denied but was sought in a single motion for collective and class certification).

Defendants contend that Plaintiffs' unsuccessful discovery motions,[3] opt-in Plaintiff

Ruggiero's unsuccessful FLSA claim, and Plaintiffs' purported failure to settle the action earlier

in the litigation should also reduce the calculation of attorneys' fees.  *See* Defs.' Opp'n at 21-25.

As to Plaintiffs' discovery motions, Defendants mischaracterize Plaintiffs' ultimate success on

those motions.  Plaintiffs filed a total of three motions to compel over the course of the litigation.

Two were granted, in part (*see* DE 16, 142), and one was denied without prejudice and with

leave to renew (*see* DE 17) -- but none were wholly unjustified nor so lacking in success that a

reduction in fees based on those motions is warranted.  "Not every loss suffered over the course

of a lengthy litigation is cause for a reduction in attorneys' fees, particularly where the relevant

application was reasonable when made."  *Siegel,* 2016 WL 1211849, at *9 (citing *Rozell v. Ross-*

*Holst,* 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("[A] court should not disallow fees for every

motion that a prevailing party did not win.  Reasonable paying clients may reject bills for time

spent on entirely fruitless strategies while at the same time paying their lawyers for advancing

plausible though ultimately unsuccessful arguments.").  With respect to opt-in Plaintiff

Ruggiero's unsuccessful FLSA claim, the Court notes that the claim arose from the same set of

facts forming the basis of and intertwined with Ruggiero's NYLL claim, which was ultimately

settled in his favor.  The Second Circuit has directed that "[a]ttorney's fees may be awarded for

unsuccessful claims as well as successful ones ... where they are 'inextricably intertwined'

and 'involve a common core of facts or are based on related legal theories.'"  *Quarantino v.*

*Tiffany & Co*., 166 F.3d 422, 425 (2d Cir. 1999).

---

[3]     Defendants also contend that Plaintiffs' requested attorneys' fees should be
reduced for Plaintiffs' unsuccessful motions for reconsideration.  *See* DE 201 at 25.  The Court
need not address this contention as Plaintiffs' counsel voluntarily excluded time entries related to
his unsuccessful motions for reconsideration.

Lastly, as it relates to Plaintiffs' purported failure to settle the action earlier, the Court finds that Defendants' portrayal of themselves as wholly without responsibility and Plaintiffs as "unreasonable" is belied by the record.  In October 2013, the Court noted that the parties had just begun to discuss the prospect of settlement and that counsel stated an intention to "continue those discussions over the next few weeks."  DE 64.  However, the email correspondences between counsel reflects that little to no meaningful settlement discussions occurred during that time except for Plaintiffs' proposal of damages to Defendants' counsel who failed to respond. *See* Defs.' Opp'n, Ex. D [DE 200-4].  In December 2014, almost a year later, Defendants' counsel proposed his own calculation of damages to Plaintiffs' counsel and offered to "speak about the numbers when [counsel] was ready."  *Id.*, Ex. B [DE 200-2].  It appears that two years passed before *either* counsel engaged in any further settlement discussions.  *Id.*, Ex. C [DE 200-3]; Connolly Decl., Ex. A at 24-32.  It was not until February 2018 that the parties resumed settlement discussions which ultimately led to a resolution at a conference before Judge Spatt.  *See* DE 177, 181.

This was a protracted litigation which involved extensive motion practice, prolonged discovery, and delayed pre-trial deadlines caused by both parties.  The Defendants also engaged in motion practice which had limited success, including Defendants' belated attempt to de-certify the collective.  While it took seven years for a settlement to be reached, both parties appeared less than motivated to compromise and settle the action earlier.  Accordingly, based on the foregoing considerations, the Court finds that an across-the-board reduction of 45% of the hours billed by Plaintiffs' counsel is warranted here.  *See, e.g.*, *Dominguez v. 322 Rest. Corp.,* 14-CV-3643, 2019 WL 2053995, at *4 (S.D.N.Y. May 9, 2019) (applying 30% reduction to attorneys' fees in FLSA action for variety of concerns regarding time entries);  *Pocius,* 2018 WL 3999649,

at *6 (reducing attorneys' fees by 30% in FLSA action for excessive time entries); *Bond,* 2017 WL 4325819, at *8 (reducing attorneys' fees by 35% in FLSA action for a variety of concerns regarding time entries); *Kim v. 511 E. 5th St., LLC*, 12 CIV. 8096, 2016 WL 6833928, at *7 (S.D.N.Y. Nov. 7, 2016) (reducing by 40% attorneys' fees requested based on various deficiencies); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-CV10234, 2016 WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016), *report and recommendation adopted by* 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (disallowing plaintiff's attorneys' fees for drafting and filing the Complaint and reducing the remaining fees sought by 80%); *Agudelo v. E & D LLC*, 12 CV 960, 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) (finding the number of hours billed excessive and reducing attorneys' fees by 50%).

Therefore, the Court respectfully recommends that attorneys' fees be awarded in the amount of $168,032.70 as follows:

| Individual | Hourly Rate Requested | Hourly Rate Recommended | Hours Requested | Hours Recommended (45% Reduction for Robert. Connolly only) | Total |
|---|---|---|---|---|---|
| Robert Connolly | $425 | $380 | 774.3 | 425.86 | $161,828.70 |
| Evelyn Gross | $225 | $200 | 14.4 | 14.4 | $2,880.00 |
| Deanna Panico | $150 | $150 | 17.4 | 17.4 | $2,610.00 |
| Paralegal | $70 | $70 | 10.2 | 10.2 | $714.00 |
| | | | | **Total Fees:** | **$168,032.70** |

### 4.    Reasonableness of Costs

Both the FLSA and the NYLL provide for the recovery of reasonable costs.  *See* 29 U.S.C. § 216(b); NYLL § 663(1) ; *see also Becerra v. Well Made Cleaning Enters., Inc.*, No. 14-CV-3147, 2015 WL 5009274, at *9 (E.D.N.Y. Aug. 21, 2015) ("[The FLSA and NYLL]

similarly allow prevailing Plaintiff to recover costs from defendants").  Recoverable costs generally include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  The party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested."  *Ganci v. U.S. Limousine Serv. Ltd.,* No. 10-CV-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (citation omitted).  In the absence of adequate substantiation, a party is not entitled to recover costs.  *See Douyon,* 49 F. Supp. 3d at 352 ("[W]ith this record, the Court has no way of confirming that these costs … were incurred by counsel."); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761, 2013 WL 2352855 , at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

Plaintiffs seek to recover $10,860.57 in costs as follows:  (1) $350.00 for the filing fee; (2) $210.00 for service of process; (3) $9,827.57 for deposition transcripts; and (4) $473.00 for mailing.  *See* Connolly Decl., Ex. A at 61.  In support of these costs, Plaintiffs submitted billing records which itemize the expenses but fail to provide the underlying documentation such as invoices, receipts or other documentary proof.  While the Court may take judicial notice of the $350.00 filing fee reflected on the docket sheet, *see Ortega v. JR Primos 2 Rest. Corp.,* No. 15-CV-9183, 2017 WL 2634172, at *8 (S.D.N.Y. June 16, 2017) (taking judicial notice of filing fee on docket), the Court declines to recommend an award of costs for the remaining expenditures in the absence of supporting documentation.  Accordingly, the Court respectfully recommends that Plaintiffs be awarded costs in the amount of $350.00 at this time.  The Court further recommends that Plaintiffs be given 30 days to provide the missing documentation of their costs as outlined here.

IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Spatt that (1) Plaintiffs be awarded attorneys' fees in the sum of $168,032.70; (2) Plaintiffs be awarded costs in the sum of $350; and (3) that Plaintiffs be given 30 days to provide the missing documentation of their costs as set forth in this Report and Recommendation.

V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the 14-day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See, e.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED:**

Dated: Central Islip, New York
       May 4, 2020

                          /s/ A. Kathleen Tomlinson
                          A.  KATHLEEN TOMLINSON
                          United States Magistrate Judge